## GIBSON v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

No. 5111. Decided September 11, 1934. (36 P. [2d] 105.)

454

*Hurd & Hurd,* of Salt Lake City, for appellant.

*Foote & Dawson* and *K. C. Tanner,* all of Salt Lake City, for respondent.

EPHRAIM HANSON, Justice.

This action was originally commenced in the city court of Salt Lake City. In the original complaint the plaintiff alleged that on January 1, 1925, defendant made and de-

livered to plaintiff its certain policy of insurance—the policy being pleaded by attaching a copy thereof to the complaint as an exhibit—by the terms of which defendant agreed to pay to plaintiff's wife $3,500 upon receipt of proof of death, and to pay to plaintiff the sum of $120.75 a month upon receipt of proof that plaintiff, prior to the age of 60, was wholly and presumably permanently prevented from pursuing any and all gainful occupations; the first monthly payment to be made six months after the date of said total and presumably permanent disability; that on August 16, 1928, he sustained a fracture of his right leg at the knee and other injuries which wholly disabled him, and that he would be so wholly disabled for all time to come, and was thereby permanently prevented from pursuing any gainful occupation; that the policy was in full force and effect when the injury occurred and all premiums paid; that written notice of the injuries was given on January 2, 1929, and on January 30, 1929, a statement from a duly licensed physician was furnished defendant, setting forth the nature of the injuries and that plaintiff was wholly and permanently disabled from pursuing any and all gainful occupations; that, more than 6 months after the happening of said injuries, plaintiff demanded from defendant the first monthly installment of $120.75, but defendant failed and neglected to pay the same. The prayer is for the sum of $120.75, with interest from February 19, 1929, and costs. The so-colled policy attached to the complaint is a certificate issued by the defendant showing that the Ogden Union Railway & Depot Company, as plaintiff's employer, had contracted to insure plaintiff in the sum of $2,000. This certificate further recites that it is "furnished in accordance with the terms of the said Equitable Group Insurance Policy, which policy together with the employer's application therefor constitute the entire contract between the parties." The certificate further provides:

"If proof shall be furnished the Society that any employee insured under the aforesaid policy has, before having attained the age of

60, become wholly disabled by bodily injuries or disease and will be wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupations, the Society will pay to such employee in full settlement of all obligations under the said policy pertaining to such employee, the equivalent of the full amount of the insurance on such life in monthly installments as follows:

| Amount of Insurance | Number of Installments | Amount of Each Installment |
|---|---|---|
| $3,500.00 | 30 | $120.75 |

The first installment to be payable six months after the date when such total disability became presumably permanent, and the remainder monthly thereafter."

A rider was subsequently issued to plaintiff increasing the amount of insurance, which accounts for the amount above stated.

A demurrer to this complaint was sustained by the city court and an amended complaint filed. No question is presented on this appeal as to the correctness of the ruling sustaining the demurrer. Defendant, however, alleges error in the action of the city court in denying its motion to strike the amended complaint and its motion to strike the second amended complaint. The motion to strike the amended complaint was grounded upon the theory that it stated, and was predicated upon, a cause of action different from that alleged in the original complaint, while the motion to strike the second amended complaint asserted that said complaint alleged a cause of action different from that set up in either the original or the amended complaint.

In order to pass upon the assignments of error thus presented, it is necessary to examine the amended and also the second amended complaints. The amended complaint, so far as it is here pertinent, alleged that on January 1, 1925, the defendant, in consideration of a monthly payment of $2.10 paid to it, and of plaintiff's employment with the Ogden Union Railway & Depot Company, made and delivered its contract of insurance, whereby the defendant promised to pay to the named beneficiary $3,500 upon proof

of death of plaintiff and to pay to plaintiff the sum of $120.75 monthly for thirty months upon receipt of proof that plaintiff while so employed and prior to age 60 was wholly and presumably permanently prevented by bodily injuries or disease from pursuing any and all gainful occupations, the first payment to be made 6 months after the date of such presumably permanent disability. The second amended complaint, so far as it is here pertinent, alleged that on January 1, 1925, defendant, in consideration of a monthly premium of 60 cents for each $1,000 of insurance paid by plaintiff and a further monthly sum in an unknown amount to be paid by the Ogden Union Railway & Depot Company, issued and delivered a group policy of insurance, being policy No. 1909, upon the lives of certain employees of the depot company, to whom defendant issued individual certificates of insurance in the proper amounts; that on said date defendant issued its certificate No. 1909-2172 to plaintiff, an employee of the depot company, by the terms of which defendant insured plaintiff in the sum of $2,500; that on July 23, 1927, in consideration of additional premiums to be paid by plaintiff and said depot company, defendant issued to plaintiff a rider to said certificate, increasing the amount of said insurance to $3,500; that both the group policy and certificate contained certain identical provisions, said provisions being set out in haec verba, the pertinent parts of which have already been set out in our statement of the original complaint. It is claimed by appellant that these three complaints each relies on a different contract and so states a different cause of action. We do not concur in such contention. It is clear that only one contract is involved. The certificate set out in the original complaint expressly states that it is issued pursuant to the group policy, and that these instruments, together with the employer's application, constitute the entire contract. In setting forth the certificate only in the original complaint, plaintiff pleaded only a part of the contract. In the amended complaint, plaintiff attempted to state the substance of the

same contract of insurance, adding a statement of the consideration given for the same. In his second amended complaint, plaintiff sets out the whole contract and shows the relation of the certificate, pleaded in the original complaint, to the group policy. There was only one contract to sue upon, and an imperfect or inadequate statement of such contract could be corrected by amendment. *Larsen* v. *Gasberg*, 43 Utah 203, 134 P. 885. No new or different cause of action was injected by such amendment.

The case, however, was tried in the city court and in the district court upon the plaintiff's amended and supplemental complaint. The supplemental complaint differed from the second amended complaint only in that it set out that eight installments had become due, and prayed for $966, with interest and costs. To this amended and supplemental complaint defendant answered, admitting the issue of the group policy, the certificate, and the rider increasing the insurance to $3,500. Defendant denied plaintiff sustained the injuries alleged, and denied plaintiff was wholly and presumably permanently disabled so as to prevent him from pursuing any and all gainful occupations. Defendant admitted the group policy was in force August 16, 1928, and that demand was made for the monthly installment, but denied plaintiff was entitled to the same. After the case had been appealed to the district court, defendant filed an amended answer in substance the same as its original answer, but alleged that plaintiff's employment terminated on August 16, 1928, and the policy terminated December 31, 1928; that no proof of disability was furnished prior to December 31, 1928, or while plaintiff was an employee or while he was insured, and no proof of disability was ever furnished; that plaintiff did not prior to December 31, 1928, nor at any other time while insured, become wholly or presumably permanently disabled. Plaintiff replied, alleging tender of a portion of his January and February, 1929, premiums, the refusal of the depot company to furnish forms for submitting proof, and the inability of plaintiff to obtain such proof forms

until January 22, 1929, at which time plaintiff furnished the proof required, the denial of liability by the defendant upon the sole ground that the plaintiff was not disabled as contemplated by the policy, and claiming that the defendant was estopped to assert a forfeiture of said insurance by reason of plaintiff's failure to furnish proof prior to December 31, 1928.

Upon the issues thus made, the case was tried to a jury. The jury found in favor of plaintiff, and also found in answer to special interrogatories submitted at the request of the defendant that plaintiff was totally disabled from pursuing any and all gainful occupations as defined by the court's instructions; that his disability is presumably permanent and such as will presumably prevent him for life from pursuing any and all gainful occupations; and that such disability became presumably permanent August 16, 1928.

Defendant attacks both the general and special verdicts as being unsupported by the evidence. It is first contended that there is no substantial evidence that plaintiff's injury on August 16, 1928, rendered him totally and presumably permanently unable to pursue any and all gainful occupations within the meaning of the policy of insurance, and that the trial court erred in refusing to so decide in overruling defendant's motion for a directed verdict and a new trial, and in refusing to give requested instructions.

In order to dispose of these contentions, it is necessary to inquire into the meaning of the clause, "wholly disabled by bodily injuries or disease, and will be wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupations," as contained in the policy. This court is commited to the principle that "insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purpose of insurance." *Richards* v. *Standard Acc. Ins. Co.*, 58 Utah 622, 200 P. 1017, 1020, 17 A. L. R. 1183. This, too, in our opinion, is in har-

mony with the great weight of authority. The term "totally and presumably permanently disabled from pursuing any and all gainful occupations" must receive a liberal and reasonable construction. It cannot be literally construed without defeating the purpose of the insurance and rendering it a nullity, for, in a literal sense, a person would have to be practically insane and so physically helpless as to require some one to attend to all his wants to render him unable to engage in some line of gainful work. It is difficult to imagine such a condition, and it seems unreasonable to suppose that such was in contemplation of the parties to the insurance contract here involved. Numerous courts have passed upon the question here discussed in harmony with the views here expressed. The term "total disability" is a relative term. *Great Northern Cas. Co.* v. *McCollough* (Ind. App.) 174 N. E. 103; *Industrial Mut. Indem. Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029; *Great Southern Life Ins. Co.* v. *Johnson* (Tex. Com. App.) 25 S. W. (2d) 1093; *Brotherhood of Locomotive Fireman & Enginemen* v. *Aday,* 97 Ark. 425, 134 S. W. 928, 34 L. R. A. (N. S.) 126. And does not mean a state of absolute helplessness. *Monahan* v. *Supreme Lodge of the Order of Columbian Knights,* 88 Minn. 224, 92 N. W. 972; *Equitable Life Assurance Soc.* v. *Serio,* 155 Miss. 515, 124 So. 485; *Pacific Mut. Life Ins. Co.* v. *McCrary,* 161 Tenn. 389, 32 S. W. (2d) 1052; *Storwick* v. *Reliance Life Ins. Co.,* 151 Wash. 153, 275 P. 550; *Cato* v. *Aetna Life Ins. Co.,* 164 Ga. 392, 138 S. E. 787; *Aetna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335; *Aetna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310; *Hetzel* v. *Pacific Mut. Life Ins. Co.,* 108 W. Va. 22, 150 S. E. 385. The term "gainful occupation" is likewise a relative term. *Great Southern Life Ins. Co.* v. *Johnson,* supra.

The trial court in its instruction No. 10 defines the term above referred to as follows:

"You are instructed that the phrases 'Total and Permanent Disability Provisions,' of the insurance policy in question, to-wit: 'Wholly

disabled' and 'Wholly and presumably permanently disabled thereby for life from pursuing any and all gainful occupations,' mean such disability as would prevent the insured from, with any degree of success, within the range of his normal capabilities, earning wages or profit in some occupation or gainful pursuit, and that such disability is founded on conditions rendering it reasonably certain throughout the person's life."

This instruction follows closely the language used by the court in the case of *Storwick* v. *Reliance Life Ins. Co.*, supra, and in our opinion was as broad and as favorable to defendant as a liberal interpretation of the policy warranted. That the "capacity, experience and usual pursuits of the insured are to be considered in order to ascertain the degree of disability following an accidental injury" is also held in the following cases: *Wall* v. *Continental Cas. Co.*, 111 Mo. App. 504, 86 S. W. 491; *Great Northern Cas. Co.* v. *McCullough*, supra; *Industrial Mut. Indem. Co.* v. *Hawkins*, supra; *Great Southern Life Ins. Co.* v. *Johnson*, supra. That the parties to the policy here involved intended that the disability covered involved a consideration of the insured's capabilities and experience is deducible from the word "pursuing." For certainly to "pursue" an occupation presupposes present ability and experience to carry on such occupation. We cannot assume that it was contemplated that plaintiff, an uneducated man, should be disqualified from receiving the benefits of his policy because he might, with his present disabilities, but with training and study at some future date, pursue the profession of law or medicine or become a banker. *Industrial Mut. Indem. Co.* v. *Hawkins*, supra.

It is argued by defendant that, because the policy provides that the loss of "both hands or both feet or one hand and foot will be considered as total and permanent disability," this conclusively establishes that the loss of only one member could under no circumstances ever be considered a total and permanent disability. Such a proposition is wholly fallacious. Whether an injury results

in a total or permanent disability is a question of fact. Under the foregoing clause, it is agreed that a showing of loss of the two members referred to establishes that fact. When some other injury is sustained, the consequent disability must be proved by some other or additional proof. The insertion of this clause does, however, support the liberal construction of the policy, hereinabove outlined, concerning the meaning of "total and permanent disability," as persons disabled by the loss of the members enumerated may not be actually and literally wholly or permanently disabled from pursuing some gainful occupation, and yet would conclusively be entitled to the disability benefits impled upon the showing of the loss of such members. *Kurth* v. *Continental Life Ins. Co.*, 211 Iowa 736, 234 N. W. 201; *New York Life Ins. Co.* v. *McLean*, 218 Ala. 401, 118 So. 753.

It seems to be defendant's contention that to come within the provision "presumably permanent" there must be such proof of permanency as would require a finding as a matter of law that the disability was permanent, and, so long as any expectation of recovery was entertained by some physicians, or others familiar with the nature and extent of the injury, there could be no presumably permanent disability. We do not concur in such a proposition. The term itself implies a construction to the contrary. The word "presumably" involves the idea that there might not be absolute permanency. It includes and presupposes a state of facts from which it appears that the probability of permanency exists. Defendent, in its requested instructions, and the trial court, in its instructions, interpreted this term to be synonymous with "reasonable expectations." This, we think, is the correct interpretation. So that, where the evidence is divided as to whether the disability may reasonably be permanent or may not, becomes a question for the jury. The expectations of recovery on the part of some of the witnesses cannot, under such conditions, as a matter of law, settle the question in conformity with their views. Permanent disability as here used does not mean a disability

without any hope or possibility of recovery or change for the better, any more than total disability means entire or absolute helplessness. *Equitable Life Assur. Soc.* v. *Serio,* supra.

Whether there was total or permanent disability within the purview of the policy involved in this case was a question for the jury, and the verdict of the jury will not be disturbed if there is competent evidence to support it. 1 C. J. 511; *Metropolitan Life Ins. Co.* v. *Eoff,* 146 Okl. 193, 293 P. 1025; *Hardie* v. *Metropolitan Life Ins. Co.* (Mo. App.) 7 S. W. (2d) 746; *Aetna Life Ins. Co.* v. *Phifer,* supra; *Great Northern Cas. Co.* v. *McCullough,* supra.

We have carefully read the entire record in this case, and are convinced that there is competent and substantial evidence which warranted a submission of the case to the jury and which supports the verdict found. The plaintiff's testimony shows that he was in the third grade when he left school; that he had followed railroading exclusively, being trained as a brakeman and freight conductor; that he has never been able, since the accident which occurred August 16, 1928, in which he sustained a fractured leg near the knee, to use his injured leg; that he also lost his hearing in his left ear and his eyesight became poor and required use of glasses; that he has continual headaches; that the pain in his leg became unbearable so that he had the leg amputated in January, 1930. His physician, Dr. Holbrook, testified that for a time while he attended plaintiff the injured leg improved and then gradually grew worse until it became advisable to either perform an operation to stiffen the knee joint or amputate the leg. A condition of numbness from the knee down had arisen. In the opinion of his physician, the plaintiff, considering his particular physical condition as a whole, was totally and permanently disabled from following railroad work or from performing manual labor. Dr. Stookey testified that plaintiff was practically deaf in his left ear and that plaintiff's

vision was poor without the aid of glasses. Drs. Morrell and Landenberger, called by defendant, conceded that plaintiff was totally disabled at the time they examined or treated him. It was their opinion that plaintiff would obtain a recovery such as would give him a functionable leg. Dr. Morrell testified that he hesitated to say positively that a normal recovery would result where the joint was involved, but he had no reason to anticipate anything else the last time he saw him. According to the record, he last treated plaintiff in September, 1928. When Dr. Landenberger examined plaintiff, there was some doubt in his mind as to whether plaintiff could return to his occupation. He only examined plaintiff once, in April, 1929. While Dr. Holbrook and the doctors consulting with him deemed a stiffening of the joint advisable in January, 1930, both Drs. Morrell and Landenberger testified that in their opinion such operation was wholly unnecessary, nothwithstanding many months had elapsed since they last examined plaintiff's leg. They knew nothing of the numbness which had developed in the lower part of the leg. Other doctors testified for defendant, but their testimony simply corroborated the opinions of Drs. Morrell and Landenberger.

It is our opinion that there was such a conflict in the evidence as to the total and permanent disability of plaintiff as called for a weighing of the evidence, and such that plainly required the trial judge to submit that question to the jury. Defendant contends, however, that the evidence does not show plaintiff became totally and presumably permanently disabled on August 16, 1928, as found by the jury; that at that time the exact condition of the knee was not known, and hence it could not be said to be total or permanent without indulging in retroactive presumptions from the evidence of plaintiff's subsequent condition. While it may be conceded that there is "no presumption from the fact that a condition exists at a particular time that it existed in the past," it is also true that "proof of present condition

of a thing may sometimes be admissible and material as circumstantial evidence, persuasive as to prior condition or status." Jones Comm. on Evid. vol. 1, pp. 440, 441; 9 Encyc. of Evid. pp. 916, 917; 32 L. R. A. (N. S.) at page 1117, note. The evidence showed that the knee was not again injured after the accident. The logical inference is that the condition described by plaintiff's doctors was the natural result of the forces set in motion by the accident, and that the disability as it finally proved itself to be was permanent from the beginning. Indeed, defendant in its requested instruction No. 11 requested the court to instruct the jury that evidence of plaintiff's physical condition and alleged injuries after December 31, 1928, could not be considered except for the purpose of assisting the jury in determining what plaintiff's condition was on August 16, 1928, and as to whether or not the injuries were on that date presumably permanent. The request in modified form was granted. We see no error in the court's instruction on this point, nor do we, under all of the evidence, feel disposed to disturb the verdicts of the jury.

Defendant next submits the proposition that "no proof of disability of the character insured against was furnished as or within the time required by the policy or at all." The policy is silent as to when the proofs shall be furnished. In such case the proofs should be submitted within such time as is reasonable in view of all the circumstances of the case.

Whether the proofs in this case were submitted within a reasonable time was a question for the jury. 1 C. J. 511; 7 A. L. R. page 186, note. So also was the question as to whether the proofs submitted were sufficient to meet the requirements of the policy. 1 C. J. 511; *Ward* v. *Standard Acc. Ins. Co.* (C. C. A.) 30 F. (2d) 328, 63 A. L. R. 842. The proofs submitted were made out on forms furnished by defendant and contained full information as to the character and extent of the injury. In his

statement, as part of the proof, Dr. Holbrook stated that the injury was likely permanent; that plaintiff would not be able to follow railroading again; that he feared it was permanent. Under such evidence it was the jury's right to pass upon the question of the adequacy of the proofs. We find no error in the admission of the proofs in evidence or in the court's instructions covering this phase of the case.

Defendant has assigned error in the admission of evidence and in the court's refusal to give certain requested instructions and in the giving of certain instructions. What has already been said disposes of these assignments contrary to defendant's contentions, so that no useful purpose can be served by further discussion.

There remains, therefore, only the question of the jurisdiction of the district court to enter a judgment in excess of $1,000 in a new trial of the case upon appeal from the city court. Section 1710, c. 43, Laws of Utah 1921, ██ now R. S. Utah 1933, § 20-4-12, limits the city court's jurisdiction in actions arising on contract for the recovery of money only to a sum less than $1,000. Under the amended supplemental complaint, plaintiff sued in the city court for eight monthly installments of $120.75 each, aggregating $966, with interest on each installment from its due date. This complaint was filed October 14, 1929. The principal and interest demanded as of that time amounted to less than $1,000, so that the city court had jurisdiction. The jurisdiction of the city court is to be determined from the amount claimed and not the amount recovered, and, since the city court had jurisdiction, the district court also had jurisdiction. *Wheatley* v. *Oregon Short L. R. Co.*, 49 Utah 105, 162 P. 86.

The judgment entered by the district court amounted to $1,033.62, a sum in excess of the jurisdiction of the city court. Could the district court enter judgment for such an amount? The principal amount of the judgment was $966, so that the excess was made up entirely of interest. The

Utah territorial court in the case of *McCormick Harvesting Mach. Co.* v. *Marchant,* 11 Utah 68, 39 P. 483, 485, in passing upon the same question, decided that the district court, having acquired jurisdiction by the appeal, can "render judgment upon trial for any amount found due within the jurisdiction of the justice, and, in addition thereto, for the interest on such amount which has accumulated since the commencement of the action before the justice, and at the rate provided in the note or contract," in order to do complete justice between the parties. We think the reasoning in that case is sound. The case of *Hardy* v. *Meadows,* 71 Utah 255, 264 P. 968, relied on by defendant, does not in any wise disapprove of the rule thus established, as contended by defendant, as the city court there acquired no jurisdiction by reason of the counterclaim, as the amount sued for exceeded the court's jurisdiction, and hence the district court could acquire no jurisdiction. It follows, therefore, that the judgment entered in the instant case was within the court's jurisdiction.

We find no reversible error in the record. The judgment is affirmed, with costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, J., and FOLLAND, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.