# Aetna Life Ins. Co. of Hartford, Conn., v. Gullett.

(Decided Nov. 22, 1935.)

ALLEN & TACKETT for appellant.

J. L. HARRINGTON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

This is an appeal from a $1,300 judgment. This case has been here before, see 253 Ky. 544, 69 S. W. (2d) 1068, where many of the facts are set out. Appellant urges three grounds for reversal which we will state and dispose of as we reach them.

### Should Verdict Have Been Directed?

By the terms of the policy the appellant agreed, if before Gullett became sixty years old he became totally disabled, if he furnished appellant due proof thereof after such total disability had existed for six months, and if such disability presumably will during life prevent Gullett from pursuing any occupation for wages or profit, to pay to Gullett $500 and to add to this an additional $100 for each year the policy was in force after September 17, 1923, the date of the policy.

Gullett alleged that in the year 1930 he began to suffer from a disease commonly known as "heart trouble" or "leakage of the heart," and has since been and now is suffering therefrom, and is permanently disabled thereby and prevented from performing manual labor for compensation or financial gain.

He testified in some detail about that, of which it will be enough to say he testified he had worked for this coal company for nineteen years; that now his heart bothered him so he could not now do anything much; that it shut his wind off, and he could not get enough breath, and that this condition began in April, 1930, and has since continued.

Dr. Wells examined Gullett in June, 1932, and he testified he found him then 100 per cent. disabled, and his heart condition was he thought permanent, and rendered him unable to do manual labor.

Dr. Castle had examined Gullett in June, 1932, and in June, 1934, and had treated him off and on for eight or nine years, and he said that his heart condition was

chronic and that he was 100 per cent. permanently disabled. He could not say how long this condition had existed, but said it must have been for some time.

Dr. Pickleseimer testified he had treated Gullett off and on since June, 1931; that Gullett has a chronic heart heart condition by which he is permanently disabled; that this condition had probably existed for a year before he examined him in June, 1932.

Mr. Harrington testified he worked with Gullett before July, 1930, and that Gullett was short-winded and would have to sit down or lie down and rest at times.

In order to succeed, Gullett had to have evidence he became totally disabled while at work for the Northeastern Coal Company and afterwards remained, and would continue to remain, so disabled for life. The evidence for Gullett shows he ceased to work for this company on July 31, 1931, so he had to become disabled before that time. The plaintiff admitted he had been working for it up to that time, that he applied to it for work after that time, and had been working for a grocery company in 1931 and 1932, for 19½ days all told. Perhaps the cause of all of Gullett's trouble was bad teeth. Between these two trials he had all of them extracted, and at the second trial his condition had in many respects improved, but there is evidence the condition of his heart instead of improving had become worse, but the defendant introduced three doctors who testified they had examined Gullett and all three say they discovered some hitch, roughness, or peculiar sound in listening to his heart, but all of them testify it was not such as would prevent his doing ordinary work without danger.

The defendant urges that the testimony of these three doctors, coupled with the historic fact that he had worked until he was layed off and for 19½ days in the two years thereafter without resulting harm, so utterly refutes the testimony of the three physicians who testified for Gullett as to entitle defendant to a directed verdict; but to us this appears to be a typical jury question. We shall make further reference to this later.

### Alleged Error in Evidence.

Over the objection and exceptions of the defendant this testimony was admitted for Gullett:

4

"Q. Mack, why did you go back and ask for work if you were not able to work? A. I didn't know at that time— Iwanted to work if I could work and I really needed to work to help support my family—I thought I could make it—I thought I could.

"Q. Do you have any other means of making a living for your family other than working? A. No.

"Q. Why did you apply to the Sandy Valley Grocery Company for work? A. Because I needed bread for my children and I couldn't get it.

"Q. Was you able to work? A. No sir.

"Q. Did your eye become discolored? A. Yes sir, it was just as red as a piece of flannel.

"Q. Tell the jury about it. A. Well, it turned almost as red as a piece of flannel—I couldn't get out in the light with it at all for two months— the doctors told me I had better stay in a dark room—if the light would hit my eye it seemed like it would put it out—and I couldn't shut it."

After the defendant had shown that Gullett had been at work, we feel he was entitled to make this explanation.

A genius, in a lecture on General Grant, said:

"I saw him at the pinnacle of his greatness. It was not at Fort Donelson, nor at Vicksburg, Missionary Ridge, in his Virginia campaign, during his presidency, his tour of the world or his triumphal return, but it was in early 1885, after he had lost all he had because of the failure of Grant and Ward, when he was penniless, when because of a cancer of the throat he could no longer talk, and I saw him seated on a porch at Mount McGregor, New York, with a shawl about his shoulders, with a pencil in his hand, slowly and painfully writing his memoirs that his family might have whereon to live when he was gone. He produced a biographical and literary masterpiece. He finished it on July 19, 1885. Four days later he was a corpse."

No one would say General Grant was not then totally disabled, yet the publication of that work soon netted his family more than half a million.

The sacrifices some men will make, the dangers they will undergo to feed their families, are often beyond comprehension; but in determining the rights of men we do not use as a standard unusual examples, but what the average reasonable man would do under the circumstances, and we feel that under the ones here the average reasonable man would have done nothing. Doubtlessly the jury took the same view, hence we cannot say this verdict is the result of passion or prejudice.

### Total Permanent Disability.

The question in this case is: What is total and permanent disability?

"Total disability" does not mean utter helplessness, and "permanent disability" does not mean utter hopelessness, and a man to be totally and permanently disabled does not have to be reduced to a state wherein he is entirely dependent on others and is absolutely without hope of improvement.

A reference to 62 C. J. p. 1162, note 46, will show the federal courts have had more occasion than others to define this expression because of its being involved in war risk insurance, and in McNally v. United States (C. C. A.) 52 F. (2d) 440, it is said that it does not mean "absolute incapacity," but means such "impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation." It is not permissible to speculate about what the insured might earn if he should take training as a jeweler, as a dentist, as a tailor, etc., but what can he do now with the education that he has, the training that he's had, and the condition that he's in. See, also, Consolidation Coal Co. v. Crislip, 217 Ky. 371, 289 S. W. 270, Ætna Life Ins. Co. v. Daniel, 251 Ky. 760, 65 S. W. (2d) 1025, and Travelers' Ins. Co. v. Turner, 239 Ky. 291, 39 S. W. (2d) 216.

### The $1,300 Verdict.

One hundred dollars was to be added to the original policy provision of $500 for each year Gullett worked for this coal company after 1923. He testified he worked for them continuously till July, 1931. There is no satisfactory evidence he did not; hence there was ample grounds to sustain the jury's finding of $1,300.

Judgment affirmed.