METROPOLITAN LIFE INSURANCE COMPANY *v.* HAWLEY.

4-8018                                            198 S. W. 2d 171

Opinion delivered December 2, 1946.
Rehearing denied January 13, 1947.

*Coleman & Gantt,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

ROBINS, J.   Appellee sued appellant in the lower court on October 12, 1945, for $2,500, alleged to be due under a policy issued by appellant providing certain indemnity in case of appellee's disability.   Judgment for penalty and attorney's fee was also asked.   By an amendment to his complaint appellee reduced the amount of his claim, alleging that he was entitled under the policy to a total of forty monthly installments of $52.50 each, and that he had been paid thirty of these installments, leaving $525 due him.   Appellant's defense was that appellee, during the time the last ten instalments accrued, was not disabled within the meaning of the policy; and this averment made the issue in the court below.   From judgment of the lower court based on jury's verdict, for $472.50, appellant prosecutes this appeal.

The policy sued on was a certificate issued by appellant under a ''group policy'' covering employees of a Pine Bluff newspaper and it provided for payment of $52.50 per month for forty months, upon proof that ''insured . . . has become so disabled as a result of bodily injury or disease, as to be prevented permanently from engaging in any occupation or from performing any work for compensation or profit.''

The evidence, in which there is little dispute, shows that appellee had worked for the Pine Bluff Commercial for about thirty years.   He was circulation manager and as such earned an average (for four years before retiring from the work) of $3,985.38 net, according to his income tax returns, per year.   By reason of illness he was forced to give up his position with the newspaper in January, 1943, and did no work of any kind for about a year.   In 1944, he did some collecting at a salary of $22.50 a week, working, as he stated, when he felt like it.   In January, 1945, he began working as a salesman for a monument

dealer at a salary of $40 per week, and he was doing this during the time indemnity sought herein accrued. In this position he worked about three or four hours a day and took regular rest each day.

Dr. J. D. Riley, superintendent of the Arkansas Tuberculosis Sanatorium, testified that an examination on January 19, 1943, disclosed that appellee was suffering from pulmonary tuberculosis and that an examination on June 29, 1945, showed unimprovement. From the latter examination Dr. Riley concluded, and so testified, that appellee was totally and permanently disabled. Attached to his deposition were copies of the records of the sanatorium showing numerous examinations, all of which revealed a continuing and almost static tubercular involvement of appellee's lungs.

Dr. W. T. Lowe, a witness for appellant, testified that he had recently examined appellee and found that he had an "arrested case" of tuberculosis. He said: "Sometimes people have these cases of arrested tuberculosis . . ., not benefited much by medicine of any kind whatsoever, for his life is strictly in his own hands, and when a doctor gives him advice, . . . and he follows that advice he probably will go on and live a long time, but there is also the danger that his resistance will no: be sufficient to keep this localized area of infection dormant, maybe he will develop pneumonia, the grippe, a bad cold, or he might break a rib and puncture the lung —a good many things might lower his resistance and cause that thing to become active again." When asked as to whether Mr. Hawley is capable of doing some work, Dr. Lowe testified: "Some doctors might examine him and say he ought to stay in bed all the time, and another . . . might say it would be better for him to be up and around. The question is, is he able, can he work, if he can work and does work I or no other doctor has got a right to say he is permanently and totally disabled because his actions belie that. . . . I don't think he should be in bed; whether the work is going to hurt him or not, . . . I don't think the work will hurt him. . . . Q. It is in evidence in this case that for 30 years

Mr. Hawley was circulation manager for the Pine Bluff Commercial, and as such he had as his duty to see to it that the paper was distributed to the customers, and collections made. He has testified that it required him to work a full day for six days a week, and sometimes at night, especially on Saturdays; and seven days a week wasn't it; in your opinion could he perform his usual work with tuberculosis arrested? A. I don't think he could do that kind of work. I don't think he should try to do it. Q. That, in your opinion, would produce strain that might bring the condition back in an active status? A. Yes."

Lee Dunlap, owner of the monument concern, testified that appellee's work "is about a half time job"; that when appellee went to work for him appellee explained that he had to have rest periods . . . "some days probably he wouldn't go out at all."

Appellant urges that the lower court erred in giving instruction No. 1, at the request of appellee. This was a general instruction as to liability in cases of this kind, and merely stated the rule as frequently expressed in decisions of this court.

It is also argued by appellant that the lower court erred in refusing to give a proper instruction as to the burden of proof. This phase of the case was properly covered in another instruction given by the court.

Appellant's principal contention is that the lower court erred in refusing to give a peremptory instruction in its favor, because the proof failed to show such disability of appellee as to entitle him to indemnity under the policy.

It is urged by appellant that, since appellee was able to, and did, earn some compensation during the period for which he asked indemnity payments, he was not "disabled" within the meaning of that term as used in the policy.

Many cases from this and other jurisdictions might be cited to show the efforts of courts to arrive at a proper

construction of policies such as was issued by appellant to appellee. To enumerate these cases, and to attempt to reconcile the rules laid down in them, would serve no useful purpose. Divergent as are the views expressed in these decisions, we think it may be said that all of them support these conclusions:

(1) That the language of the policy being that of the insurer it should be given the strongest construction against the insurer that it will reasonably bear.

(2) That no rigid standard as to the extent of disability necessary to create liability can be set up and that every case must be governed by its own peculiar facts.

(3) That the disability contemplated under a policy such as is involved here does not mean utter helplessness and that ability of the insured to earn only a nominal income does not necessarily bar his right of recovery.

Dealing with this question, the Supreme Court of South Carolina, in the case of *Dunlap* v. *Maryland Casualty Company,* 203 S. C. 1, 25 S. E. 2d 881, 149 A. L. R. 1, said: "A policy of this kind cannot be held to be one of income insurance, guaranteeing the insured against depreciation of his income on account of any injury; yet, if an insured is rendered incapable of continuing in his former occupation, but is able to perform some other work, that work in our opinion must not only be an occupation or employment for which he is reasonably fitted, but must rationally approach the same livelihood and standard of living which he enjoyed prior to his injury. This in our opinion, is a reasonable construction of the policy provisions, and one which must have been in the minds of the parties." This South Carolina case, *supra,* is reported in vol. 149 American Law Reports, and after extensive annotations the editorial writer (p. 77) thus deduced the majority rule: "An employment or occupation which yields the insured a mere nominal compensation does not of itself exclude the insured from recovery under the disability clause."

We think a reasonable rule to be applied in these cases is that whenever it is shown by competent evidence

that by reason of accident or serious malady the insured suffers a considerable physical handicap and his earning capacity has been so adversely affected that he can no longer pursue the occupation for which his training or experience has fitted him and he has been forced to resort to some other occupation, from which he cannot earn a livelihood reasonably comparable to that which he was earning when he obtained the insurance, then the trial court may properly submit to the jury for its solution the question of whether the insured has suffered the disability required under the policy to entitle him to the indemnity for which he has sued.

One of the latest decisions of this court in which the question of disability under a policy with language similar to the policy here involved is that of *Aetna Life Insurance, Company* v. *Orr*, 205 Ark. 566, 169 S. W. 2d 651. In that case Dr. Orr sought and obtained in the lower court judgment for disability under a policy providing indemnity for him in case he " 'becomes totally and permanently disabled by bodily injuries or disease, and is thereby prevented from performing any work or conducting any business for compensation or profit.' " He had suffered an x-ray burn on the thumb and fingers of his right hand, which he asserted had disabled him; but it was shown that during the period for which he sought indemnity he earned an average of $426.53 per month from the practice of his profession. While the judgment of the lower court in that case was reversed, we refused to dismiss the case, saying: "In passing on the question of total disability, consideration must be given not only to the specific wording of the policy, but also to the business or profession of the insured when the policy was issued and when the claim arose. What would totally disable or incapacitate one person might not seriously impair some other person. For instance: the loss of a toe might be a total permanent disability to a professional dancer, but might have no such effect upon a lawyer or a school teacher. Likewise, the loss of a finger might be a total permanent disability to a professional pianist, but would have no such effect upon a lawyer or

school teacher. These sketchy illustrations show that each case has to be determined on its own particular facts. As is stated in 29 Am. Jur. 874: 'Of course, total disability is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case; consequently, what constitutes total disability in a particular case depends largely upon the occupation, employment and capabilities of the person insured.' Chief Justice HART, speaking for this court in *Aetna Life Insurance Company* v. *Spencer*, 182 Ark. 496, 32 S. W. 2d 310, recognized this obvious truth when he said: 'Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business or the execution of them in the usual and customary way.' "

We conclude that under the testimony adduced it was proper for the lower court to submit the question of appellee's disability to the jury.

Counsel for appellee in their brief argue that the lower court should have allowed the statutory attorney's fee and penalty in this case; but appellee has not cross-appealed and we therefore may not consider the correctness of the lower court's order in this particular.

The judgment of the lower court is affirmed.