ROBERT P. MASON, appellee, v. LOYAL PROTECTIVE LIFE
INSURANCE COMPANY, appellant.

No. 49484.

(Reported in 91 N.W.2d 389)

July 28, 1958.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellee.

GARFIELD, C. J.—This is a law action to recover payments claimed to be due on a policy of insurance against total disability resulting from sickness. There was a jury verdict and judgment for plaintiff. Upon this appeal defendant insurance company contends it was entitled to a directed verdict and the court erred in certain instructions to the jury. The vital question presented is the interpretation to be given the policy definition of "total disability."

The only evidence is that offered by plaintiff, a doctor of medicine in Des Moines. Of course in considering whether the testimony presents a case for the jury it must be viewed in the light most favorable to plaintiff. Plaintiff started practice February 3, 1947. That year his net income from practice, before taxes, was $6009. By 1954 this figure had gradually increased to $27,159. During about five months of 1955 plaintiff's income from practice was $13,119, before taxes. In June 1955 he was compelled to give up practice because of "nerve deafness" which disabled him from performing several of the essential duties pertaining thereto. January 3, 1956, plaintiff took up a three-year residency in radiology at the government Veterans Hospital in Des Moines. One engaged in radiology, largely X-ray work, is not required to depend on his hearing to a considerable extent.

For his first year of residency plaintiff was to receive $2840 but actually was paid $2712. For his second and third years he was to receive $3195 and $3550 respectively. (Trial was had in May, 1957, during the second year of residency.) Most "residents" are married and have families. After three years of residency plaintiff plans to enter practice as a radiologist and at the end of one year he may take an examination for the purpose of being certified to the American Board of Radiology. This certificate is recognized by all doctors as evidence the holder is an adequately trained specialist.

The residency program at the Veterans Hospital in Des Moines functions in connection with the State University of Iowa Hospital in Iowa City where half the third year of training is spent. Instruction there is by professors in the S.U.I. medical school. Three months of the third year are spent in X-ray work on children at the Blank Hospital in Des Moines. The three-year residency is a learning period which materially differs from the general practice of medicine. Plaintiff never did any X-ray work as a practitioner and had no training for anything except the general practice.

Most of the first year of residency the physician is being taught and is under extremely close supervision. He is not allowed to undertake treatment on his own responsibility and his supervisors closely check treatments he gives throughout the training period. During the second year of residency the physician is under similar supervision with somewhat more discretion as to when to seek advice from his chief superior. Physicians do not make careers out of being residents. According to the chief of the radiological service of the "VA" hospital, "it is a training period, like going to school." The program is open only to those with an M.D. degree.

There is no satisfactory treatment or known cure for the nerve deafness plaintiff has acquired.

The policy in suit, issued June 6, 1948, for an annual premium of $192.60, provides for monthly indemnity of $200 during total disability resulting from sickness, but not beyond age 65 and for a period not exceeding ten years. The policy defines "total disability" as "complete loss of business time due to inability of the Insured to engage in his regular occupation or any gainful occupation for which he is reasonably fitted." This is the vital provision of the policy, the meaning of which is in dispute.

I. The basic issue raised by defendant's motion for directed verdict is that as a matter of law plaintiff was not totally disabled within the policy definition. Defendant concedes for purposes of this appeal plaintiff was compelled to leave the general practice of medicine. It is clear this inability to engage in general practice resulted from sickness. Defendant's main argument is that the evidence establishes as a matter of law plaintiff

was engaged in "gainful occupation for which he is reasonably fitted", as the policy states. The gainful occupation evidently referred to and the only one suggested is the residency in radiology.

We cannot accept this argument. If it were not for the money plaintiff receives during his residency certainly the finding would be justified it is a training period, like going to school, as the undisputed evidence shows, not a gainful occupation for which plaintiff was reasonably fitted. Indeed the training is for the purpose of fitting plaintiff for an occupation different from the one he previously pursued, the only one for which he had been fitted. Going to school usually helps bring ultimate financial gain to the student. But in the ordinary, popular sense it is hardly a gainful occupation.

Nor do we think the essential character of this residency as a training or educational period becomes, as a matter of law, by plaintiff's receipt of the modest payments allowed him, a gainful occupation for which he is reasonably fitted. These payments resemble the financial aid granted students by scholarships of various kinds or, perhaps more nearly, the educational allowances to veterans by the so-called "G. I. bill." A medical student who received a scholarship or educational allowances as a veteran is essentially a student, not a person engaged in a gainful occupation for which he is fitted. It will be remembered payments plaintiff received during his first year of residency approximated only one tenth his earnings during his last full year of practice. See in this connection Division III hereof.

■ ■ A multitude of decisions involve insurance clauses essentially like the one here or less favorable to the insured. After reading a good many of them we are convinced our holding is supported by the great weight of authority. We are committed to the rule that such a disability clause should be liberally construed in favor of the insured. "Total disability" as used in this connection does not mean, as its literal construction would require, a state of absolute helplessness. It means inability to do all the substantial and material acts necessary to the prosecution of the occupation of the insured or some other occupation which he might enter in a customary and usual manner. Hoover

v. Mutual Trust Life Ins. Co., 225 Iowa 1034, 1040, 282 N.W. 781, and citations.

Virtually this same rule prevails in most jurisdictions. Many decisions supporting it are set out in the annotation 98 A. L. R. 788, 789, and earlier annotations there listed. See also 45 C. J. S., Insurance, section 939c(2); 29 Am. Jur., Insurance, section 1161. The Hoover case, supra, overrules Lyon v. The Railway Passenger Assur. Co., 46 Iowa 631, perhaps the leading case in the country upholding the literal meaning of such a disability clause. It is apparent from Hurley v. Bankers Life Co., 198 Iowa 1129, 199 N.W. 343, 37 A. L. R. 146, the Lyon decision was then (1924) adhered to with much reluctance. And Prusiner v. Massachusetts Bonding & Ins. Co., 221 Iowa 572, 265 N.W. 919, clearly conflicts with the Lyon case although it is not there mentioned by name.

 The view we have adopted and the prevailing one generally is that total disability is a relative term which depends largely upon the character of the occupation, the capabilities of the insured and the circumstances of the particular case. It is usually a fact question to be determined by the jury. Prusiner and Hoover cases, supra; Metropolitan Life Ins. Co. v. Hawley, 210 Ark. 855, 198 S.W.2d 171, 173, 174; Nickolopulos v. Equitable Life Assur. Soc. of U. S., 113 N. J. L. 450, 174 A. 759; Belcher v. Prudential Ins. Co. of America, 205 S. C. 188, 31 S.E.2d 1, 3 (disability resulting from nerve deafness); Principi v. Columbian Mutual Life Ins. Co., 169 Tenn. 276, 84 S.W.2d 587, 589, 590; Gibson v. Equitable Life Assur. Soc. of U. S., 84 Utah 452, 36 P.2d 105, 109, and citations; Anair v. Mutual Life Ins. Co., 114 Vt. 217, 42 A.2d 423, 159 A. L. R. 547, 557; Annotations, 1 A. L. R.2d 952, 969, on "Loss of hearing as within meaning of total disability clause"; 29 Am. Jur., Insurance, section 1161, page 874.

Precedents which support our holding that plaintiff's residency in radiology does not prevent his recovery as a matter of law and defendant was not entitled to a directed verdict include: Industrial Mut. Indem. Co. v. Hawkins, 94 Ark. 417, 127 S.W. 457, 459, 29 L. R. A., N. S., 635, 21 Ann. Cas. 1029; Aetna Life Ins. Co. v. Gullett, 262 Ky. 1, 89 S.W.2d 1, 3; Nick-

olopulos v. Equitable Life Assur. Soc. of U. S., supra, 113 N. J. L. 450, 174 A. 759; Medlinsky v. Metropolitan Life Ins. Co., 146 Misc. 855, 263 N. Y. S. 179, 183, 184; Blackwell v. Prudential Insurance Co. of America, 206 S. C. 320, 34 S.E.2d 57; Jefferson Standard L. Ins. Co. v. Curfman, Tex. Civ. App., 127 S.W.2d 567; Gibson v. Equitable Life Assur. Soc. of U. S., supra, 84 Utah 452, 36 P.2d 105, 110.

The Hawkins case, supra, states (at page 422 of 94 Ark., page 459 of 127 S.W.): "It was manifestly the intention of the parties that he should receive indemnity when he was * * * wholly and totally disabled and prevented from the prosecution of any business which * * * he was able to do or capable to engage in; * * *."

Aetna Life Ins. Co. v. Gullett, supra, expresses this view (at page 5 of 262 Ky., page 3 of 89 S.W.2d): "It is not permissible to speculate about what the insured might earn if he should take training * * *, but what can he do now with the education that he has, the training that he's had, and the condition that he's in. [Citations]."

The Nickolopulos case, supra, says (at page 457 of 113 N. J. L., page 762 of 174 A.): "If an insured has totally lost his ability to earn money in the only way he can, if he is totally unfit and unable to do the only work he knows, he is totally disabled, at least until some new ability to earn his living is created."

45 C. J. S., Insurance, section 939c(2), page 1114, states: "* * * insured is entitled to benefits if he is disabled from engaging in the occupation at which he was employed at the time of the occurrence of disability where he is not qualified to seek a livelihood in any other occupation. * * *

"The determination of the existence of disability * * * is limited to a consideration of the present capabilities of insured and it does not extend to a speculation in respect of an occupation or profession which insured, with training and study, might be able to follow in the future, for insured is not required, by expensive training or education, to familiarize himself with another occupation for which he was unqualified at the time of the commencement of the disability, but, if he has actually ac-

quired training in another occupation after his disability has occurred, that training may be considered."

It is perhaps unnecessary to set out these quotations since the policy expresses virtually the same thought by stating: "any gainful occupation for which he is reasonably fitted." In this respect the policy is more favorable to the insured than those considered in most of the decisions we have read. In any event, as we have tried to make clear, we think it cannot be said as a matter of law plaintiff's residency is such an occupation as the quoted language refers to.

II. Defendant contends instructions 6, 7 and 8 to the jury violate the rule that instructions should not give undue emphasis to any particular phase of the case favorable to either side (plaintiff here), and correct statements of the law, if repeated to the point of such undue emphasis, may constitute reversible error. The rule contended for is well settled. State v. Haesemeyer, 248 Iowa 154, 165, 79 N.W.2d 755, 761, and citations; Clarke v. Hubbell, 249 Iowa 306, 316, 86 N.W.2d 905, 911. However, we are not persuaded there is reversible error in this respect here.

Instruction 6 deals with the matter of "complete loss of business time due to inability of the insured" etc., within terms of the policy. We do not find it necessary to construe the term "loss of business time." See in this connection Pennington v. Pacific Mutual Life Ins. Co., 85 Iowa 468, 52 N.W. 482, 39 Am. St. Rep. 306, a leading case; Continental Casualty Co. v. Wagner, 8 Cir., 195 F.2d 936, 31 A. L. R.2d 1216, and annotation, 1222. There can be no doubt it was proper and necessary to instruct upon the meaning of the term.

Instruction 7 deals more particularly with the question whether plaintiff's residency was a "gainful occupation for which he is reasonably fitted." Instruction 8, without referring to his residency, deals with the question whether plaintiff was able to perform work other than his regular occupation.

Instructions 6 and 7 contain the statement, in substance, that plaintiff is not entitled to recover if he derives from his residency a financial gain which reasonably approaches his livelihood and standard of living from his regular occupation of

general practitioner. Instruction 8 states in substance that any gainful occupation for which plaintiff is reasonably fitted would be one which reasonably approaches his regular occupation in terms of livelihood and standard of living.

Defendant's argument in this connection is that the disparity of plaintiff's income from his general practice and his residency is so marked, in a ratio of almost ten to one, the jury could not possibly find for defendant under these instructions. It is apparent that if they correctly state the law, this argument does not present a sound basis for condemning the instructions. Defendant's real complaint is that the evidence is not such as to justify a verdict in its favor. And if defendant's argument were sound, provided the instructions correctly state the law, it is clear any undue emphasis they might give the matter of financial gain is not prejudicial to defendant since it was not entitled to prevail. In any event, as we have indicated, we think instructions 6, 7 and 8 do not place such undue emphasis upon the question of financial gain as to constitute reversible error.

III. It is not clear that defendant attacks in this court, as incorrect statements of the law, the language referred to of instructions 6, 7 and 8. It admits "support is found in some of the cases using somewhat similar language in instructions." One sentence in argument does assert the language referred to "is to emasculate the plain words and meaning of the contract." Most of the applicable precedents proceed upon the theory that such a disability clause is not plain but is ambiguous and subject to construction. State ex rel. Metropolitan Life Ins. Co. v. Allen, 337 Mo. 525, 85 S.W.2d 469, 471, is an express holding to this effect. This is implicit in our opinion in Hoover v. Mutual Trust Life Ins. Co., supra, 225 Iowa 1034, 282 N.W. 781, overruling Lyon v. The Railway Passenger Assur. Co., supra, 46 Iowa 631. Numerous other decisions support this view.

Since defendant's argument may call for our opinion as to whether the language of instructions 6, 7 and 8 referred to in Division II hereof correctly states the law, we have carefully investigated the question. Perhaps somewhat to our surprise, we find much authority to support the statements in these instructions and are not persuaded they are incorrect in this regard.

Decisions which furnish direct support for these instructions include: Metropolitan Life Ins. Co. v. Hawley, supra, 210 Ark. 855, 198 S.W.2d 171, 173, 174; Hurwit v. Prudential Ins. Co. of America, 45 Cal. App.2d 74, 113 P.2d 691, 693, 694, and citations; Prudential Ins. Co. of America v. South, 179 Ga. 653, 177 S.E. 499, 98 A. L. R. 781, 786; Keith v. Chicago, B. & Q. R. Co., 82 Neb. 12, 116 N.W. 957, 23 L. R. A., N. S., 352, 130 Am. St. Rep. 655; Arico v. Prudential Ins. Co. of America, 241 App. Div. 826, 271 N. Y. S. 241, 242; Dunlap v. Maryland Casualty Co., 203 S. C. 1, 25 S.E.2d 881, 149 A. L. R. 1, 5, and annotation, 7, 60; Patton v. Prudential Ins. Co. of America, 181 Tenn. 138, 178 S.W.2d 760, 1 A. L. R.2d 750, 754, and annotation, 756, 780.

There are other precedents to like effect. Prudential Ins. Co. of America v. South, supra, included in the above list, is cited with approval in our Hoover opinion at page 1040 of 225 Iowa. The South case cites a number of decisions for this statement at page 658 of 179 Ga., page 502 of 177 S.E., page 786 of 98 A. L. R.: "The expressions 'any occupation' and 'any work' * * * should be construed to mean the ordinary employment of the * * * insured, or such other employment, if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities."

The extended annotation to Dunlap v. Maryland Casualty Co., supra, in 149 A. L. R. 7, 20, 21, points out that in deciding whether ability to do work other than insured's regular employment is such as to preclude payment of benefits under a total disability clause there are four basic elements to consider. (1) The element of quantity. What amount of work is insured permitted, or to be able, to perform without being prevented from recovery under the disability clause? (2) The element of quality. What type of work is insured permitted, or to be able, to perform without being prevented from recovery? (3) The element of economic gain. What compensation is insured permitted to receive without being prevented from recovery? (4) The element of time. How long is insured permitted to work without being prevented from recovery under the disability clause?

■ The annotation considers these elements separately and numerous decisions are cited. It states in discussing the third of these elements (page 60) : "In the great majority of cases in which the courts considered the question of compensation at all, it has been held that total disability within the meaning of the disability clause contemplates that the compensation earned or to be received from the occupation or employment engaged in shall, at least in a fair sense, be remunerative, and not merely nominally so. And the modern trend seems to be to consider compensation as remunerative only if it returns the insured approximately the same livelihood as he received in his former occupation."

The annotation just quoted from is supplemented in 153 A. L. R. 430, 436. A later annotation, to Patton v. Prudential Ins. Co. of America, supra, in 1 A. L. R.2d 756, 780, also contains the statement quoted from 149 A. L. R.

1 Appleman Insurance Law and Practice, section 673, says : "It is at least necessary, among states adopting less liberal rules than those previously discussed, that in order for the insurer to be excused from making disability payments, the insured must be able to engage in some occupation reasonably comparable to his present one in type of work and in remuneration." See also 45 C. J. S., Insurance, section 939c(3), pages 1117, 1118.

Of course we do not say mere reduction in earning capacity resulting from disability amounts to total disability under such a clause as we have here. But we are not prepared to disagree with what seems to be the trend of authority that such words as "any gainful occupation" in this policy mean any occupation, reasonably approximating the same livelihood of the insured's regular occupation, as he might fairly be expected to follow, in view of his station, circumstances and capabilities. We think, therefore, instructions 6, 7 and 8 are not incorrect in the respect suggested by defendant.

Since we are unable to sustain any assigned error the judgment is—Affirmed.

All JUSTICES concur.