COLOVOS v. HOME LIFE INS. CO. OF NEW YORK

No. 5297.   Decided January 4, 1934.   (28 P. [2d] 607.)

*Cheney, Jensen & Marr* and *C. W. Wilkins,* all of Salt Lake City, for appellant.

*H. G. Metos,* of Salt Lake City, for respondent.

COX, District Judge.

This case comes before this court on appeal from the Third district court. The action was brought by the plaintiff, Gust Colovos, against the Home Life Insurance Company of New York to recover total and permanent disability benefits alleged to have accrued monthly under a contract of insurance, and for a premium paid after the alleged disability.

Appellant in the trial below admitted the issuance of the policy, that it was in full force and effect, but denied any total or permanent disability. The case was tried before the court sitting with a jury, and a verdict rendered for the

plaintiff therein. From the verdict and judgment thus rendered, the appellant has filed its appeal. It set up nineteen assignments of error, which may be classified in groups, raising the following propositions to be considered by this court: (1) The court's failure to direct a verdict. (2) Insufficiency of the evidence to show total permanent disability. (3) That the verdict and judgment are void because of uncertainty. (4) That the recovery should have been limited to payments accruing to and including November, 1930. The first two propositions are covered by appellant's assignments of error Nos. 10, 12, 14, 15, 16, and 17.

No. 10 refers to the requested instruction of the appellant for a verdict of no cause of action. No. 12 refers to the appellant's requested instruction No. 9, which instructs the jury to find for the defendant in the court below, in case they find the plaintiff's legs and left arm are unaffected by the injury, and that he has a limited use of his right arm. No. 14 refers to the plaintiff's motion for a nonsuit. No. 15 refers to plaintiff's motion for a directed verdict. No. 16 refers to the refusal of the court to grant the motion for a new trial and errors at law occurring at the trial, and No. 17 to the insufficiency of the evidence to justify the verdict. These assignments are grouped together for the purpose of this discussion, and will dispose of the first two issues raised.

Referring first to the testimony before the jury in this case, it is undisputed that the disability was entirely confined to the insured's right arm, particularly to the elbow and wrist, and was due to arthritis. As to the extent of this disability, there is some difference of opinion. The plaintiff testified that in September, 1930, he became afflicted with the disease, which started with a pain in his hand, when he was working on his farm at Magna; that he was unable to do a number of the things on his farm necessary in the harvesting of his crops; that for forty-five days he could not sleep; that after this pain stopped in the daytime but continued at night; that he visited Dr. La Barge

for about a month for treatment; that he visited Dr. Kahn, who had his tonsils and teeth removed; that now when he works his arm bothers him; that at the time of trial it pained him; plaintiff is able to bend his arm at the elbow approximately ninety degrees, can move the right wrist laterally, and can touch each finger on the right hand to the thumb on the right hand; that the plaintiff cannot grip; that his hand pains when it is squeezed; that he can hold a five-pound weight out at five degrees with the arm stretched, gripped above; that the right wrist at the time of the trial was larger than the left wrist.

Dr. Kahn testified that he examined the plaintiff; that he was suffering from arthritis, and complained of a great deal of pain in the elbow and wrist, which were swollen and enlarged; that there is no way the medical profession can determine whether or not a patient is in pain; that he had plaintiff's tonsils and teeth removed; that there is an elevation on the right wrist of considerable thickness caused by the inflammation; that the plaintiff is handicapped in the use of his right arm; that there is from 50 to 60 per cent normal motion in the wrist; that the pain in the wrist will possibly subside, but that the bony condition of the elbow and wrist will be permanent. In the witness' opinion the arm will never be normal; that the plaintiff will never be able to do the same work that he was formerly able to do before his illness; that the doctor would not consider that the plaintiff was able to do any work with his right arm, or that he could not do any farm or ranch work with his right arm; that the plaintiff could not lift a bag of potatoes with his right arm, and it is probable that plaintiff's condition will not get worse; that most of the witness' work is emergency surgery and general practice; that he is not a specialist on bone injuries.

The balance of plaintiff's testimony related largely to his occupation, and it appears from this testimony that the plaintiff had worked at a mill in Magna years before, but of recent years had farmed and peddled, that in farming

it is necessary to plow and dig, and that in peddling it is necessary to lift packages, sacks, and bags from 50 to 120 pounds. There is testimony from others testifying that it is impossible to do general farm work or to peddle without the use of both arms and hands. Plaintiff's wife testified that plaintiff cannot work, and that he complains about his hand hurting him.

The defendant's testimony is confined to that of Dr. Martin C. Lindem and Dr. A. L. Huether, relating to the disability in the plaintiff's arm. Dr. Lindem testified that he specialized in such diseases as arthritis, and examined the plaintiff ten days before trial, and had X-ray pictures taken; that he found a distortion of the joint in the right elbow, and, to a less extent, in the right wrist; that there is a distortion of the bone entering the movable part of the joint, and that the bone is larger and has a rougher surface that was not normal and interferes with the motion to a certain extent; that, as a general rule, such interferences cause pain in the productive stage, but usually arrive at a fixed condition where it is not necessarily painful; that the plaintiff's trouble is in a healed or fixed condition; that there is nothing to indicate to the doctor that the plaintiff's condition would become worse; that the plaintiff is not restricted at the elbow joint to any great extent; that the plaintiff's arm is not now painful with passive motion; that the plaintiff lacks about twenty degrees of complete extension, and about five degrees of complete flexion in the elbow; that the normal extension is one hundred twenty degrees; that the plaintiff has 60 to 65 per cent disability, industrially speaking, considering 100 per cent as the loss by severance of an arm at the middle of the upper arm. The doctor further testified he was not sure the condition of the wrist had reached a fixed condition. Dr. Huether's testimony, with the addition of taking the X-rays, was practically the same as that of Dr. Lindem.

The plaintiff's testimony tends to bear out the theory that the disability of the right arm, as testified to, prevents him

from continuing in the occupation of farming and peddling, or engaging in other like work for compensation or profit. While the defendant's testimony tends to show that the plaintiff is only suffering from 60 to 65 per cent disability in the right arm, industrially speaking, that is, figuring 100 per cent disability of the right arm as the loss by severance of an arm at the middle of the upper arm, it is the contention of the defendant that, since the plaintiff is not disabled to the extent that he is unable to do any work similar in nature to that that he has formerly done, he is not entitled to recover under the policy because of total permanent disability. At this point it is necessary to refer to the contract of insurance, particularly to the second paragraph of paragraph 2 of said policy, which reads as follows:

"Disability shall be deemed to be total whenever the insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation and performing any work for compensation or profit, and under this contract disability shall be presumed to be permanent after the insured has been continuously and totally disabled for not less than three months and during all of that period prevented from engaging in any occupation and performing any work for compensation or profit."

In this matter the court is called upon to construe the contract, particularly the scope and meaning of the following lines set out in the paragraph above quoted: "* * * Prevented from engaging in any occupation and performing any work for compensation or profit." It is the opinion of this court that the term used, "engaging in any occupation and performing any work for compensation or profit," has a well-defined meaning. It means ability to follow any recognized occupation, and to do substantially all the acts that are necessarily and usually performed by one who follows that occupation. It could not be said that a man could engage in an occupation if he were able to do only one or two of the acts customarily performed by one engaged in such an occupation. Furthermore, there is an element of con-

tinuity in following an occupation; that is, the ability to continuously perform substantially all of the ordinary acts which, in the ordinary course of events, a man following such an occupation is called upon to perform. Furthermore, "compensation or profit," as used in the paragraph quoted from the policy, is qualified, and relates to the preceding words, "engaging in any occupation and performing any work," and contemplates that the compensation or profit to be received from the occupation engaged in, or work done, shall, in a fair sense, be remunerative, and not merely nominal, and in the case at bar a small farmer who could not do substantially all the labor that usually is necessary to be done, or a peddler who cannot lift or handle the bags of produce he is accustomed to peddle, could not conduct his farming or his peddling for profit or compensation in a remunerative sense. *Great Northern Casualty Co.* v. *McCullough* (Ind. App.) 174 N. E. 103; *Maresh* v. *Peoria Life Ins. Co.*, 133 Kan. 191, 299 P. 934; *Storwick* v. *Reliance Life Ins. Co.*, 151 Wash. 153, 275 P. 550; *Aetna Life Ins. Co.* v. *Spencer* (1930) 182 Ark. 496, 32 S. W. (2d) 310; *New York Life Ins. Co.* v. *Best* (1930) 157 Miss. 571, 128 So. 565; *Hetzel* v. *Pacific Mut. Life Ins. Co.*, 108 W. Va. 22, 150 S. E. 385.

In this case it is the opinion of the court that the foregoing is a proper construction of the language of the contract between the parties, and that the testimony above set forth in determining whether it is sufficient to show total and permanent disability, should be considered in view of the foregoing construction of the contract or agreement. That being so the question to be determined is whether the plaintiff is so disabled that he is prevented from engaging in any occupation and performing any work of substantially the same kind and nature as he was accustomed and able to perform prior to the time that he became afflicted with the disability herein set out.

From the testimony it is clear that the plaintiff is an uneducated man; that his only work has been farm work and

the peddling of farm products, with a little work as a common laborer in the mills at Magna. The testimony is undisputed that he could not get work at Magna and the mills because he could not pass the physical examination required. There is considerable testimony in the record that a man cannot plow and dig, and do general farm work without the use of both of his hands; that the defendant cannot lift sacks from 50 to 120 pounds; that he cannot drive a truck used in peddling, although he has driven one occasionally since the alleged disability. In view of this testimony, it became a question of fact for the jury to determine, under the instructions of the court which substantially defined the terms of the contract, as herein defined by this court, whether or not the disability was total and permanent. 1 C. J. 511, § 340; *Metropolitan Life Ins. Co.* v. *Eoff,* 146 Okl. 193, 293 P. 1025.

We are therefore of the opinion that there was sufficient evidence to go to the jury on the question of whether or not the defendant was totally and permanently disabled, and that there is sufficient evidence to uphold the verdict herein rendered. This view of the court disposes of the assignments of error relating to the motion for a nonsuit, directed verdict, new trial, and of the defendant's requested instructions Nos. 1 and 9. This court's construction of the contract disposes of the later two. In reaching this conclusion, this court is not unmindful of the fact that a number of authorities cited by the appellant hold that, as long as a person is able to do any act of his occupation, or any labor for compensation, no matter how small, he cannot recover, but this court is unable to agree with that line of cases, because to take such an extreme position would virtually place such a construction on the contract that it would defeat the purposes of the contracting parties.

It is well known that insurance companies, before writing insurance, through the application of the insured, become familiar with his physical condition, and also with his life's activities. The only purpose that the insured can have in

taking insurance for total and permanent disability is a safeguard against the time when he may be disabled from doing the things that he customarily has been able and is qualified to do as an occupation and a means of getting compensation or profit. Likewise, the insurance company, knowing the facts as it does, issues such policies as the one before this court. If the policy in fact does not offer this kind of security to the insured, then the purpose of the insured is defeated. The strict construction defined by appellant would defeat the purpose of the contract of insurance so far as the insured would be concerned, and would permit the insurance company to collect the benefits of the contract, with but remote possibilities of ever being called upon to disburse any benefits. To follow the application urged by appellant, and followed up somewhat in the cases cited by it, virtually amounts to a strict construction of the contract of insurance in favor of the insurance company and against the insured.

Since the insurance company through the information it gathers through the application becomes aware of the position in life of the insured, and the occupations which he has followed, and since these have a direct bearing upon the issuance of the policy, it appears to this court that it is a better rule to construe the contract of insurance liberally in favor of the insured, and the cases cited by this court herein follow those liberal constructions. Insurance companies write the contract of insurance; they are charged with the duty, when dealing with the public and offering insurance, to so word the contract that it will be clearly understood as to what benefits the insured is to derive if he accepts the contract of insurance.

The appellant also refers to certain Utah cases which are industrial cases and arise out of the industrial statutes, and also refers to the rule of this court, as laid down in the workmen's compensation cases appealed from the Industrial Commission. These cases are decided upon statutory liability and requirements which governs the courts in these

decisions, and the same theory does not apply to cases like the one at bar which arise upon a contract of insurance.

One further question relating to the evidence in the case is raised by the assignments of error Nos. 1, 2, and 3. No. 1 relates to the following question: "And would you say that this pain in this arm would prevent him from doing any kind of work?" It was objected to on the ground that it called for a conclusion of the witness, and invaded the province of the jury. The objection was overruled. The witness gave the following answer: "I would not consider he could do any work with that right arm." The record shows that Dr. Kahn previous to this question had testified as to the plaintiff's condition, particularly the pain caused by arthritis, as found in the plaintiff's arm. Dr. Kahn was on the stand as an expert witness. The question virtually calls for his opinion. It is a well-settled rule of law that an expert can give his opinion. Dr. Kahn merely gives his opinion as to the effect this particular disease would have upon the arm. The weight to be given to the doctor's opinion and the determination of the ultimate fact of whether the plaintiff was permanently and totally disabled would still be for the jury. We are therefore unable to see where the question in any way, or the answer given, would amount to reversible error. In the case cited by appellant to support its position, *Utah Copper Co.* v. *Industrial Comm.*, 69 Utah 452, 256 P. 397, the thing involved there was not the effect of any pain or injury upon the body, but a statement of an ultimate fact by the doctor; that is, the cause of death. That was the very thing the jury was to determine, while in the present case the thing to determine was whether there was permanent and total disability of the plaintiff. The doctor merely gave his opinion as to the effect of pain on one member of the body; that is, the right arm. The question of whether the plaintiff was totally and permanently disabled was the ultimate fact to be determined by the jury. We do not think the case cited by the appellant is in point in this case, and we are therefore of

the opinion there was no error in refusing to sustain the defendant's objection.

The next assignment of error is based upon the following question: "You pled guilty to manufacture of intoxicating liquor in January, 1926, in Magna, didn't you? A. I don't remember now." An objection was interposed ■ as incompetent and irrelevant, and the objection was sustained. The objection was properly sustained. It could have no material bearing on the issues involved in this case.

Assignment of error No. 3 relates to a question asked. This assignment of error is also without merit. Assignments of error Nos. 7, 8, and 9 relate to the court's refusal to have the jury answer special interrogatories requested by the appellant, and refused by the court. We think there is no merit to these assignments. The instructions of the court were full and complete, and referred to the facts and the law of the case, and, from the instructions as a whole, they were clear and concise enough to require the jury to pass upon the ultimate fact of whether the plaintiff was totally and permanently disabled before making an award to him in any amount.

Assignments of error Nos. 6 and 13 refer to the instructions given and requested instructions. No. 6 refers to the following instruction: "16. If you find the issues in favor of the plaintiff, you shall then determine the ■ amount of your verdict. In this connection you are instructed that your verdict should not exceed $20.00 per month commencing September 15th, 1930, and the sum of $92.76 insurance premium paid in October, 1930." The objection to this instruction is because it did not limit the time that the payments were to end. Assignment of error No. 13 is the defendant's request for an instruction which was refused. The only material difference was that in the defendant's requested instructions the jury was limited in awarding recovery up to November, 1931, the time of the trial of the case. The questions raised by these errors can be treated together.

As a general rule of law, where an insurance contract is involved, you cannot include in the judgment sums not yet payable under the contract, and the court should have instructed the jury that recovery is limited up to the time of the filing of the amended complaint. However, in view of the record in this case, and of the verdict herein set out, we do not believe that the court's failure to so instruct is reversible error in this particular case. From the record, the verdict, and the pleadings in the case, the verdict should be upheld. In this particular case the plaintiff only asks for recovery from September 15, 1930, up to the time of the filing of his amended complaint, November 19, 1931, at the rate of $20 per month, in addition to the premium paid, after his claimed disability. This fact was pointed out to the jury in the court's statement of the case to the jury. The following is the verdict the jury rendered: "We, the jurors impaneled in the above case, find the issues in favor of the plaintiff and against the defendant and assess his damages in the sum of $20.00 per month commencing September 15, 1930, and the sum of $92.76 insurance premium paid in October, 1930." The jury was properly instructed when to start the computation if they should find the plaintiff totally and permanently disabled, and did so in their verdict. Even though the jury did not fix the total amount due, nor did it state the time that compensation should cease, still the court, from the pleadings and the record and the verdict, can, as a matter of law, determine the date the compensation should stop, which is at the time of the filing of the amended complaint. This being so, it therefore becomes merely a mathematical computation. Such a defect in a verdict is not fatal where the amount can be fixed by computation, and the verdict should be upheld. 38 Cyc. 1878, gives us the following rule: "* * * Strict technical accuracy is not required in the statement of the amount, it being sufficient if it can be ascertained by mere mathematical calculation and the verdict is good, although the amount of recovery is stated by reference to the amount

claimed in the petition or can be ascertained by reference thereto." *Knight* v. *Fisher*, 15 Colo. 176, 25 P. 78.

The court in a case of this kind, where the verdict may be ambiguous or doubtful, can look at the entire record and all the pleadings in the case, and, if from ██ these a definite sum can be fixed, judgment on the verdict should be entered for such fixed and definite amount. 34 C. J. 503, par. 796; *Sullivan* v. *New York Ry. Co.* (Sup.) 94 N. Y. S. 370; *Jones* v. *King*, 30 Minn. 368, 15 N. W. 670; *Logan County Nat. Bank* v. *Townsend*, 3 S. W. 122, 8 Ky. Law Rep. 694; *Telfair County* v. *Clements*, 1 Ga. App. 437, 57 S. E. 1059.

This disposes of all the errors assigned by the ap- ██ pellant with the exception of the contention raised that the plaintiff brought the action prematurely. The policy provides as follows:

"If due proof shall be furnished to the company at its home office in the City of New York, that the insured has become totally and permanently disabled, before the anniversary of the policy on which his age at nearest birthday is 60 years, (the company will) 1. Waive the payment of premiums, etc. 2. Pay a monthly income of one per centum, etc."

The record shows that the plaintiff visited appellant's office in Salt Lake City and presented his claim. The appellant bases its claim on the theory that the action was prematurely brought upon the following questions and answers from a questionnaire submitted by the appellant to Dr. La Barge, who treated the plaintiff in this case. The questions and answers relied upon are as follows:

"If insured is now unable to perform his regular duties, is he physically able to engage in lighter work of some sort, such as light clerical or shop work, light housework, light outdoor work, chores, etc.? If so explain. Ans. No other disability except involvement of the right wrist.

"Ques. Does the disability completely prevent the insured from doing work of any kind or in engaging in any business or occupation? Ans. No."

After receiving this report, the appellant notified the plaintiff it would not allow his claim. The plaintiff immediately thereafter brought this action. We are of the opinion that this objection is without merit. The plaintiff's right of action cannot be limited by his physician's report, nor is he bound by his statements. 33 C. J. 19, § 666; Couch Encyc. of Insur. Law, § 2226; *Southern Woodmen* v. *Davis*, 124 Ark. 518, 187 S. W. 638; *Carson* v. *New York Life Ins. Co.*, 162 Minn. 458, 203 N. W. 209.

The case is therefore affirmed, with instructions to the court below to enter judgment on the verdict at the rate of $20 per month from September 15, 1930, to November 20, 1931, a total of $283.33, and $92.76 insurance premium, with interest on said amounts from date of verdict at 8 per cent. per annum; costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.