## RALSTON v. METROPOLITAN LIFE INS. CO.

No. 5608.   Decided December 8, 1936.   (62 P. [2d] 1119.)

*Van Cott, Riter & Farnsworth* and *Grant H. Bagley,* all of Salt Lake City, for appellant.

*K. C. Tanner,* of Portland, Or., and *Willard Hanson,* and *D. N. Straup,* both of Salt Lake City, for respondent.

MOFFAT, Justice.

The parties will be referred to generally as plaintiff and defendant as they appeared in the trial court. The plaintiff recovered a judgment against defendant on a certificate of insurance issued under date of December 31, 1923. The Southern Pacific Company under a group policy insurance plan had provided for insurance on the lives of certain of the employees of that company. The plaintiff was a brakeman in the employ of the Southern Pacific Company. Under the provisions of the master policy, the wage schedule, and the term of service, the plaintiff was entitled to and carried insurance for the sum of $2,500. There was issued to him a certificate for that amount. The policy

covered both life and disability. The disability provisions only are involved. The relations of the parties are tripartite, including plaintiff, defendant, and the employer company.

On August 31, 1930, plaintiff met with an accident at Grant's Pass, Or., while in the course of his employment by the Southern Pacific Company. While riding on the engine a woman drove an automobile against the engine so as to strike plaintiff. He suffered a compound fracture of his left leg. He was taken to a hospital at Grant's Pass and kept under the care of doctors until October following, when he was removed to the general hospital of the Southern Pacific Company at San Francisco. When he was taken to the hospital in San Francisco, he was unable to walk and was removed from the train to the hospital in an ambulance. He remained at the hospital until February 22, 1931, when he was released to go home.

While he was in San Francisco he went to the office of the defendant, Metropolitan Life Insurance Company, at 600 Stockton street. Upon inquiry at the information office he was directed to another office in the building. He went to the office to which he was directed. There he gave to the person apparently in charge of the office his name, and upon being asked what he wanted, told the woman who had asked him his business that he was an injured employee of the Southern Pacific Company, that he had been injured at Grant's Pass on August 31st, and that he felt that he was entitled to his insurance. He was told that they would have to get proof from the superintendent of the Portland office. He then wrote to his wife to get the proof. She wrote to the superintendent of the Southern Pacific Company. In reply to Mrs. Ralston's communication, she received a letter on a Southern Pacific Company letterhead and signed by E. L. King acknowledging receipt of her letter making claim for "total and permanent disability benefits for her husband" under the group life insurance policy. She was advised the matter had been referred to

the San Francisco office for further handling and that she would be further notified.

Mrs. Ralston later received a letter from the Southern Pacific Company dated March 3, 1931, advising her that:

"We are in receipt of information from Dr. W. B. Coffey to the effect that Mr. Ralston is not totally and permanently disabled for all work and therefore is not considered eligible to file claim for disability benefits under his group life insurance."

Directions were given for procedure to keep his insurance in force during his absence from work.

Plaintiff then, through an attorney, secured blanks furnished from the San Francisco office of the defendant. Plaintiff was examined by a physician at Forest Grove on March 3, 1932. He said he knew the physician who examined him to be a physician of the Metropolitan Life Insurance Company. Proof of disability was furnished. Defendant denied liability.

Under the policy, defendant was insured for $2,500 in case of total and permanent disability resulting from bodily injury or disease before the age of 60 years. In case of such disability it was essential: (1) That the person injured must at the time have been in the service of the employer to whom the policy of insurance was issued. This condition is conceded to have been met. (2) The policy must have been in full force and effect at the time of the injury. As to this second requirement there is no controversy. (3) That proof of the total and permanent disability of the insured must be furnished the defendant. As to this third point, the parties divide. One question is whether proof was waived, there being no question as to when the proof was furnished, and the other is as to total and permanent disability. Appellant in its reply brief makes this point clear. It is there said:

"We do not question the sufficiency of the proof and do not contend that it was not furnished in time. What we do contend is that the proof was not waived on March 3, 1931, as instructed by the court,

nor at any other time, and therefore plaintiff could recover only installments which became due after April, 1932, when proof was furnished."

This statement with others eliminates the question of time or sufficiency of notice actually served in April 1932, and leaves only the questions of whether or not there was a waiver effective March 3, 1931. And (4) the fourth and last proposition as to whether or not the plaintiff in fact sustained an injury resulting in a total and permanent disability.

As to the admissibility of the evidence: In view of the triangular arrangement of the group life insurance, the issuance of the certificate to plaintiff, the method and apportionment of payment of premiums, the required tenure of service, salary schedule, record and proof of injury, and treatment thereof, the evidence objected to in the instant case is admissible for the purpose of showing the relationship of the parties. The court was not in error and did not abuse its discretion in admitting the evidence.

The defendant admits that on the 31st day of August, 1930, plaintiff met with an accident; that he was an employee of the Southern Pacific Company and at the time of the accident was performing his duties as a brakeman; that as a result of the accident he sustained an injury to his left leg between the knee and ankle resulting in a compound fracture; and that at the time of the injury the insurance policy was in force and effect. In defendant's reply brief it is stated: "We do not question the sufficiency of the proof [of disability] and do not contend that it was not furnished in time. What we do contend is that the proof [of disability] was not waived on March 3, 1931, as instructed by the court, nor at any other time, and therefore plaintiff could recover only installments which became due after April, 1932, when proof was furnished."

The point is argued that the court instructed the jury

on an issue not raised by the pleadings and not supported by the evidence. The error thus complained of relates to an instruction given by the court to the jury as follows:

"You are instructed, as matter of law, that due proof of the plaintiff's disability was waived by the defendant on the third day of March, 1931, and you are directed to find such issue in favor of the plaintiff."

In plaintiff's complaint it is alleged that:

"The defendant has failed and refused to pay said indemnity or any of the installments thereof, and has denied its liability to the plaintiff, for the sole reason that plaintiff's injuries are not such as to come within the terms and provisions of said policy of insurance and defendant thereby waived its right to object or complain of the sufficiency of said proofs furnished."

This allegation was denied by defendant.

The 3d day of March, 1931, is the date of the letter from the Southern Pacific Company, wherein Mr. Ralston's total and permanent disability is denied and his claim for disability benefits are refused by the Southern Pacific Company. This letter was written by the superintendent of the Southern Pacific Company.

This letter of March 3, 1931, from the Southern Pacific Company to Ralston, containing a denial of liability, did not bind the insurance company. The Southern Pacific Company was not the agent of the defendant for that purpose. The court's instruction directing the jury that due proof of plaintiff's disability was waived on March 3, 1931, was error. Conceding, as appellant does, that notice of disability was sufficient and furnished in time, the only question remaining as to the instruction is: When did the disability payments first become due and payable? Excluding the date of March 3, 1931, referred to by the court in the instruction, three other possible dates may be suggested: (1) The date when the written proof of disability was received by the defendant as provided in the policy. (2) The

date when the defendant denied liability; and (3) the date of the injury. The date when written proof was received by the defendant is not in dispute, nor is the date when defendant denied liability. The policy provides, "upon receipt of due proof of such disability, the * * * company will pay."

The other assignments of error relate to the question of total and permanent disability, except the one contention relating to a disability that can be corrected ■ by medical treatment. This latter matter was not in issue. There is no pleading relating to it. The court was justified in refusing to instruct upon that matter. 14 R. C. L. 784, § 50.

Defendant at the close of the trial interposed a motion requesting the court to instruct the jury to return a verdict for defendant upon the ground of insufficiency of the evidence to prove, or tend to prove, that plaintiff was totally and permanently disabled so as to prevent him ■ from engaging in any occupation or performing any work for compensation or profit. The testimony shows that due to the compound fracture of the leg received at Grant's Pass there is a resulting condition of the injured limb producing disability. X-ray pictures of the injured leg were taken. The medical testimony is to the effect that Ralston has an injury to his left leg; that he has some difficulty in completely flexing the lower leg. He has a disability in completely flexing the foot of the left leg. The calf muscles in the back of the leg have been involved in a fibrous process as a result of the injury to the leg. Ralston also has some fibrous adhesions in the anterior group of muscles of the leg. When he attempts to flex the foot, the movement of the ankle is somewhat limited. In walking he throws the left leg out. This is due to the toe or foot dropping. He is unable to bring the foot up, so the toe drags on the ground and the leg is swung out to avoid stubbing the toe. The left leg is about one inch shorter than the right or uninjured leg. There is an overlapping of the tibia and fibula. The bones

above and below the fracture are out of alignment to the extent of about ten degrees, which throws the weight bearing line at the knee joint, producing a strain on the muscles around the knee joint and causing a lack of coordination of that group of muscles. No improvement has been made in two years. The condition is practically fixed. The doctor who had taken the X-ray photographs two years before the trial of the cause, and had seen and examined plaintiff at the time of the trial, expressed the opinion that plaintiff could not perform manual labor, several types of which were suggested in the questioning as typical. Plaintiff had no education beyond the grade schools and no preparation for any occupation other than railroad train service. He had worked for the Southern Pacific Company for twenty-three years.

The statement thus summarized states the evidence of plaintiff. It is not free from conflict, but that is a matter for the jury. We are of the opinion the court properly denied the requested instruction for a directed verdict in favor of defendant. There was sufficient evidence to take the cause to the jury.

We are therefore brought to the further contention which divides the parties—the nature and degree of the disability. This was an issue submitted to the jury. There being evidence to go to the jury, if submitted under proper instructions, we are powerless to disturb the finding ∎ of the jury upon that matter. Appellant attacks the instruction given by the court. That part of the instruction complained of relates to the court's definition of the words, "permanent disability," contained in the policy of insurance. The court instructed the jury that the "words 'permanent disability' as used in the policy of insurance sued upon, do not require a disability that must, at all events, be a lasting one, continuing to the death of the insured, but mean a disability that is reasonably calculated to be of *long duration* as distinguished from a temporary disability." (Italics added.) It is argued that a disability of *long duration* is such that one

person might conclude a disability of two weeks or two months to be of long duration. To be forcibly submerged in water for five minutes would not only be a period of *long duration* but might be disastrous. To be deprived of water for a week would be a period of *long duration;* a month or two without food would be likewise. Six months' or a year's illness might be one of long duration; so might a disability of a year, or two years, or three years, though not permanent. Such statement is not a satisfactory guide to a jury nor an accurate rendering of the meaning of the words of the policy referring to "permanent disability" benefits.

The policy provides that an "employee shall be considered as totally and permanently disabled who furnishes proof that * * * he is permanently, continuously and wholly prevented thereby from performing any work for compensation or profit." Defendant requested the court to instruct the jury that the term "permanent disability" as used in the policy meant a disability "that will last for all time to come." This request was denied by the trial court, and we think rightly. The time element of duration of disability to constitute "permanent disability," as used, must be such disability as from the facts shown it is reasonable to presume that the disability will continue for the remainder of life. Reasonably considered, the disability will continue until death, but it is not required to be shown to the exclusion of everything but certainty "that it will last for all time to come"; but must be such that from the evidence the jury would be justified in finding that, as presently viewed in the light of the evidence, the injury is of such character as will persist during life.

From other provisions of the policy, "permanent disability" was not intended to preclude all hope for recovery. It is provided that "at any time, on demand from the Company," the employee shall furnish proof of the continuance of disability. It is also provided that after a lapse of two years such proof shall not be demanded oftener than once a year. Such provisions indicate that, although a present per-

manent disability may reasonably be expected to continue during the remainder of life, yet is not such as to preclude all hope of recovery or possibility of removal or termination of the disability before death, which at the time of the trial the evidence in the minds of the jurors indicated, and justified a finding that it was reasonably certain that the disability would so continue.

Under the provisions of the policy the disability benefits would all be paid in less than three years. Proof must be submitted of the nature and character of the disability resulting from the injury. From this the jury is entitled to an instruction it may apply as the rule of law in measuring the evidence to determine the fact of duration of disability. Experience has taught that so-called temporary disabilities may be permanent, and that disabilities thought to be permanent sometimes are not. It is therefore necessary to lay down a rule that will, as accurately as possible, furnish a guide in such matters.

Policies of insurance containing similar language, though not always identical, have been before the courts for consideration. This court has heretofore adopted and approved an instruction defining permanent disability. It has said that a disability "is deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." *Miller* v. *New York Life Ins. Co.*, 84 Utah 539, 37 P. (2d) 547, 549; *Gibson* v. *Equitable Life Assur. Soc. of U. S.*, 84 Utah 452, 462, 36 P. (2d) 105.

We think the instruction given by the trial court as to permanent disability is in conflict with the rule above stated and was prejudicial in that it left the matter to the jury to determine, first, the question of what was a period of long duration, and, secondly, permitted that period to be the measure of permanency. Since the submission of the case, appellant has cited *Travelers Ins. Co.* v. *Cox* (Tex. Civ. App.) 86 S. W. (2d) 844. The doctrine therein announced adheres to a strict or literal construction of the terms of the policy.

Respondent has also cited the case of *Equitable Life Assur. Soc.* v. *Serio*, 155 Miss. 515, 124 So. 485, which adheres to the liberal construction doctrine. We think the rule laid down by this court takes the middle ground and states the rule that should be adhered to.

It is not necessary to discuss other assignments, as the issue as finally submitted resolved itself into the question of "permanent disability" and the date from which interest should accrue. We need not discuss the evidence submitted upon this issue nor intimate anything as to its character or sufficiency as the case must be remanded for a new trial.

The judgment of the lower court is reversed, and the cause remanded for a new trial, with costs to appellant.

ELIAS HANSEN, Chief Justice.

I also concur in what is said by Mr. Justice FOLLAND touching instruction No. 8.

EPHRAIM HANSON, Justice.

I also concur in the views expressed by Mr. Justice FOLLAND concerning instruction No. 8 in his concurring opinion.

FOLLAND, Justice (concurring).

I concur in the reversal of the judgment for the reasons stated in the opinion of Mr. Justice MOFFAT. I cannot agree with all that is said respecting waiver of furnishing proof of disability. No such issue was raised in the pleadings. 14 R. C. L. 1431. Plaintiff did not plead that defendant waived the filing of proof of disability, but, on the contrary, pleaded in his complaint that proof of disability was duly filed within a reasonable time and that the company having denied liability on the sole ground that plaintiff's injuries are not such as come within the provisions of the policy it thereby waived its right to object to the sufficiency of the proof furnished. The court received, without objection, evidence of the submission to the company of proof of

disability in April of 1932. No objection was made by the defendant touching the sufficiency of the proof or the timeliness of the furnishing thereof. No point is now made with respect to such matters. There being no issue with respect to waiver of proof, the evidence tending to show waiver should have been excluded as irrelevant and immaterial, and the instruction given by the court as "a matter of law" that the company had waived due proof of plaintiff's disability on the 3d day of March, 1931, was erroneously given.

I concur in the holding that the Southern Pacific Lines was not the agent of the insurance company for the purpose of waiving proof of disability, but believe all the evidence tending to show waiver was immaterial and irrelevant to any issue and should have been excluded on that ground.

The policy of insurance provides that:

"The first monthly installment will be paid upon receipt of the proof of total and permanent disability."

If it be found that plaintiff is entitled to recover, the date when payment should be made is thus fixed by contract between the parties, and that date is the time of furnishing "due proof of total and permanent disability" to the company. That is the date when payments start and interest begins to run. There is no conflict in the evidence that this was April of 1932.

No reference is made in the prevailing opinion to the giving of instruction No. 8. Exception was properly taken by the defendant and the assignment of error argued on this appeal. Our silence respecting this assignment will have the effect, at least as to this case, of approving instruction No. 8, and on a retrial the trial court would feel bound to again instruct the jury in the same language. I think part of the instruction as given is not a correct statement of the law applicable to the insurance policy in question. Defendant excepted to the whole instruction and also specifically to the following portions of it:

"Therefore, if you find from a preponderance of the evidence in this case, that prior to his sixtieth birthday, the plaintiff, Ralston, suffered

injuries which caused a permanent disability, as that term is defined in these instructions, and if you further find from the evidence in this case that such disability is total, as this term is defined in these instructions, thereby preventing said Ralston from engaging in his occupation as a railroad brakeman, or from engaging in such other fairly remunerative work as he is able to do, considering his training and experience, then and in that event, you will be justified in finding that said Ralston is 'permanently and totally disabled' under the terms of said policy of insurance."

The vice of this instruction is that the jury are instructed that plaintiff is entitled to recover if he was disabled from "engaging in his occupation as a railroad brakeman," or, in the alternative, "from engaging in such other fairly remunerative work as he is able to do," etc. That is, if the jury find he cannot perform the duties of a railroad brakeman, he is entitled to recover even though there might be other remunerative work he could perform. This is tantamount to an instruction to the jury to return a verdict for the plaintiff, because, irrespective of what other work plaintiff might or might not be able to perform within his capabilities in his present condition, it was quite evident he could not perform the very exacting duties incident to his occupation as a railroad brakeman. The insurance policy did not insure against disability which prevented him from performing the duties of "his occupation" as some policies do, but from "engaging in any occupation or performing any work for compensation or profit." While the instruction given might have been appropriate had the policy insured against disability from performing the duties of "his occupation," it is not a correct statement of the law applicable to a policy such as this which insures against "engaging in any occupation and performing any work for compensation or profit." In *Metropolitan Life Insurance Co.* v. *Foster* (C. C. A.) 67 F. (2d) 264, 266, an instruction in very similar language was condemned, the court saying:

"We are of opinion that under the policy before us an inability to follow insured's regular occupation or others within his training and experience would not be total disability if there was work not within

his training and experience but within his capacity which without injury to his health he could perform for compensation or profit. Of course, the work must be substantial and not trifling, amounting to a job, an occupation. The judge might well charge as he did that a total disability under this policy does not necessarily imply an incapacity to do any work at all, or that the person must be bedridden, but he erred in restricting the ability to work to the regular occupation of the insured as brakeman and to those occupations within his training and experience, all of which the insured testified required two hands."

See, also, *Travelers Ins. Co.* v. *Cox* (Tex. Civ. App.) 86 S. W. (2d) 844.

This court in recent cases has approved instructions defining the term "total and permanent disability," under policies somewhat similar to this. In *Gibson* v. *Equitable Life Assurance Soc.*, 84 Utah 452, 36 P. (2d) 105, the instruction approved is as follows:

"'You are instructed that the phrases "Total and Permanent Disability Provision," of the insurance policy in question, to-wit: "Wholly disabled" and "Wholly and presumably permanently disabled thereby for life from pursuing any and all gainful occupations," mean such disability as would prevent the insured from, with any decree of success, within the range of his normal capabilities, earning wages or profit in some occupation or gainful pursuit, and that such disability is founded on conditions rendering it reasonably certain throughout the person's life.'"

In *Miller* v. *New York Life Ins. Co.*, 84 Utah 539, 37 P. (2d) 547, 549, the following instruction was given by the trial court, and although not attacked so the court would be required to directly pass on the same, it was referred to with approval:

"'You are instructed that total disability is any impairment either of the mind or the body rendering it impossible for the disabled person to follow continually any substantially gainful occupation; it is deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it.'"

"'You are instructed that one is totally disabled within the meaning of the policy of insurance mentioned in evidence when he is so far

disabled that he can not, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit.' "

In *Colovos* v. *Home Life Ins. Co. of New York,* 83 Utah 401, 28 P. (2d) 607, 609, this court construed the language in question as follows:

"In this matter the court is called upon to construe the contract, particularly the scope and meaning of the following lines set out in the paragraph above quoted: '* * * Prevented from engaging in any occupation and performing any work for compensation or profit.' It is the opinion of this court that the term used, 'engaging in any occupation and performing any work for compensation or profit,' has a well-defined meaning. It means ability to follow any recognized occupation, and to do substantially all the acts that are necessarily and usually performed by one who follows that occupation. It could not be said that a man could engage in an occupation if he were able to do any one or two of the acts customarily performed by one engaged in such an occupation. Furthermore, there is an element of continuity in following an occupation; that is, the ability to continuously perform substantially all of the ordinary acts which, in the ordinary course of events, a man following such an occupation is called upon to perform. Furthermore, 'compensation or profit,' as used in the paragraph quoted from the policy, is qualified, and relates to the preceding words, 'engaging in any occupation and performing any work,' and contemplates that the compensation or profit to be received from the occupation engaged in, or work done, shall, in a fair sense, be remunerative, and not merely nominal."

For the reasons stated, the instruction as given by the trial court should be disapproved. This court, in the cases cited, has taken a liberal view with respect to the meaning of the phrase "engaging in any occupation and performing any work for compensation or profit," and I do not feel that an instruction which goes farther in favor of the insured should be approved, and certainly I am not in favor of approving one which would permit the jury to find that such disability existed if the insured person was merely injured so that he could not perform the duties of his then occupation.

WOLFE, Justice (concurring).

I concur with the opinions of Mr. Justice MOFFAT and Mr. Justice FOLLAND to the effect that the case must be reversed.

I concur with Mr. Justice MOFFAT that the letter of March 3, 1931, did not bind the insurance company and that it was error to instruct the jury that such letter was a waiver of due proof by plaintiff. I agree with the opinion of Mr. Justice FOLLAND that there was no room for the submission of an instruction that "due proof of the plaintiff's disability was waived by defendant on the 3rd day of March, 1931." I understand that defendant never did complain or object to the sufficiency of the proofs furnished in 1932 which were introduced in evidence. It was only when plaintiff attempted to show that the defendant had waived proofs by the letter of March 3, 1931, in order to start the period of payment earlier, that defendant complained and rightly because, as said in Mr. Justice FOLLAND'S opinion, the plaintiff not only failed to plead waiver, but actually affirmatively pleaded that he had filed due and sufficient proof of loss, which in fact he did in April of 1932.

I assume that the opinion by Mr. Justice MOFFAT comes to the conclusion regarding the three possible dates suggested as to when the payments may begin, that it was when the proof was filed in April, 1932, that payments would begin if the plaintiff prevailed.

I concur in the opinion of Mr. Justice FOLLAND in what he says regarding instruction No. 8.