Joseph D. **GARDNER**, Appellant,

v.

**NEW YORK LIFE INSURANCE COM-
PANY**, a corporation, Appellee.

No. 5638.

United States Court of Appeals
Tenth Circuit.

March 4, 1958.

Dan S. Bushnell, Salt Lake City, Utah, for appellant.

A. W. Watson, Salt Lake City, Utah (George A. Critchlow and Ned Warnock, Salt Lake City, Utah, were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

BRATTON, Chief Judge.

Joseph D. Gardner instituted this action against New York Life Insurance Company to recover judgment for amounts paid as premiums upon four policies of life insurance with double indemnity and waiver of premium benefits. It was alleged in the complaint that the policies provided that in the event the insured became totally disabled and remained continuously in that condition for at least six months, the insurer would waive payment of the premiums falling due after the commencement of such total disability; that plaintiff was totally disabled and had been so for a period in excess of six months on the dates certain premiums were due; that the plaintiff paid such premiums under protest; and that repayment had been demanded and refused. In response to a motion for a more definite statement, plaintiff subsequently pleaded that the premiums were paid on January 28, January 28, February 3, and February 3, 1955, respectively. By answer, payment of the premiums was admitted but total disability as defined by the terms of the policies on the due dates of such premiums was denied. The issue of total disability was submitted to the jury. The jury returned a verdict for plaintiff and judgment was entered accordingly. After return of the verdict and entry of the judgment, the parties filed in the case a written stipulation in which it was agreed that the case be treated as though defendant, at the close of plaintiff's evidence, moved for an order directing a verdict for defendant upon the ground that there was no substantial evidence to show that plaintiff was totally disabled within the provisions of the policies; as though the court took such motion under advisement and reserved its ruling thereon; as though defendant, at the close of the evidence for both parties, moved for an order directing a verdict for defendant upon the ground that there was no substantial evidence to show total disability within the provisions of the policies; as though the court took such motion under advisement and reserved its ruling thereon; as though, after the return of the verdict and entry of the judgment, and within the time required by the rules of civil procedure, rule 50(b), 28 U.S.C. A., defendant moved for judgment notwithstanding the verdict upon the ground that there was no substantial evidence to show total disability of plaintiff within the provisions of the policies; and as though the court granted the motion for judgment in favor of the defendant notwithstanding the verdict, thus in essence granting the motion for a directed verdict for defendant made at the close of all the evidence. And it was provided in the stipulation that by executing such stipulation, plaintiff in no way waived his right to appeal from and challenge on appeal the order granting the motion for a directed verdict and judgment notwithstanding the verdict the same as though the motions had been made at the proper times respectively. The court granted the motion for a directed verdict for defendant

made at the close of the evidence of both parties and the motion for judgment in favor of the defendant notwithstanding the verdict. The verdict and the judgment for plaintiff entered thereon were set aside, and judgment was entered for defendant. Plaintiff seasonably appealed.

There is need at this juncture to consider the definitive language contained in the policies respecting total disability. Two of the policies involved were referred to as 17 million series policies and two as 25 million series policies. With certain conditions not having any present material bearing, each policy provided that upon receipt of due proof that the insured was totally disabled as defined in the policy and had been continuously so disabled for at least six months, the insurer would waive the payment of each premium falling due after the commencement of such disability and during its uninterrupted continuance. There were some textual differences between the provision in the 17 million series policies and that in the 25 million series defining total disability. But the parties agreed that the cause should be submitted to the jury as though the language in the 17 million series policies was identical with that in the 25 million series policies; and the cause was submitted in that manner. The pertinent portion of the provision in the 25 million series policies defining total disability read:

> "Subject to the other terms and conditions hereof, total disability is defined as a disability of the insured, resulting from bodily injury or disease, which wholly prevents him from engaging in any and every occupation or business for remuneration or profit."

The provision must be construed in respect to its meaning and scope in accordance with the law of Utah. And as we understand the law of that state, the provision should be given a liberal construction which reasonably tends to effectuate the objects and purposes contemplated by the parties at the time of the issuance of the policies in respect to the benefits which the insured would derive therefrom; that it was not essential in order to come within the purview of the provision that the insured be helpless to the extent that he was unable to attend to any of his needs; and that it was enough if he was unable to perform with a measure of success substantially all of the acts of any gainful occupation within the range of his normal capabilities. Colovos v. Home Life Insurance Company of New York, 83 Utah 401, 28 P.2d 607; Gibson v. Equitable Life Assurance Society of United States, 84 Utah 452, 36 P.2d 105; Ralston v. Metropolitan Life Insurance Co., 90 Utah 496, 62 P.2d 1119.

In order to recover for the premiums paid under protest, the burden rested upon plaintiff to prove that he was totally disabled within the purview of the policies at the time such premiums were paid and had been so disabled for more than six months prior thereto. But in determining whether the burden was met and discharged, it is to be borne in mind that the verdict was directed against plaintiff for failure of proof to establish total disability; and it is settled law that where a verdict is directed against a party for failure of proof, the evidence adduced by him shall be taken as true and all reasonable inferences fairly to be drawn therefrom are to be viewed in the light most favorable to him. United States v. Blair, 10 Cir., 193 F.2d 557; Jones v. Chubb, 10 Cir., 216 F.2d 869; Wabash Railroad Co. v. Johnson, 8 Cir., 211 F.2d 664; International Paper Co. v. United States, 5 Cir., 227 F.2d 201.

Viewed in that manner, evidence was adduced which established these facts. Plaintiff was born in 1905. He went through grade school and high school at Salt Lake City, Utah. He spent three years in Germany on a mission for the Church of Jesus Christ of Latter Day Saints. He attended the University of Utah for one year and also attended New York University for one year. He specialized in business administration at

New York University. In the main, his occupation was that of property ownership, management, and supervision. Between 1941 and 1954, he owned at various times properties in Phoenix and Tucson, Arizona, Las Vegas, Nevada, Santa Monica, California, and Salt Lake City. And he engaged in the ranching business on a limited scale. In 1954, he owned and operated individually or through corporations of which he was the sole owner of stock except for qualifying shares a motel in Price, Utah; a motel in Van Nuys, California; three office buildings in Long Beach, California; four parking lots in Long Beach; and a parking lot in Salt Lake City. There were approximately fifteen employees at the motel in Price; approximately six at the motel in Van Nuys; and approximately thirteen at the buildings and parking lots in Long Beach. And he was negotiating for the acquisition of motels in Dallas and Arlington, Texas. He maintained two homes and offices, one at Salt Lake City and the other at Newport Harbor, California. At each of the properties, he had a resident manager who kept accounts, deposited funds in the local bank, and made remittances to the office in Long Beach. But plaintiff initiated general policies, discharged executive functions, and visited the properties two or three times a month. Individually or through the corporations, he owned two trucks and two automobiles which were used in connection with these scattered business enterprises. In going from one property to another, plaintiff traveled by automobile or truck on the average of from four thousand to seven thousand miles per month. He transported by automobile or truck equipment, furniture, and supplies, such as beds, bedding, ice makers, and other items of furniture. And he sometimes took active management of motels for short periods; sometimes attended parking lots; and sometimes was required to assume charge in emergency situations such as repairing and reconditioning disabled boilers.

Plaintiff sustained injury to his back in 1937 which gave him trouble from time to time. But the particular injury relied upon here as the cause of total disability within the meaning of the policies occurred in April, 1954. While lifting a box of automobile batteries out of the trunk of an automobile and onto a freight dock in Salt Lake City, he sustained serious injury to his back. That night he went to a hospital and a physician worked on his back for about two hours trying to relieve the pain. A few days later, he again went to the hospital and spent three or four days there in an effort to eliminate the pain and the trouble. A week or two later, he went to the hospital a third time for further treatment and manipulation under an anesthetic. And on June 5, an orthopedic surgeon performed upon him a spinal operation which involved the removal of a disc and a fusion of the joint between the fifth lumbar and the sacrum. Thereafter,—during the period here in question—he suffered knife-like pains in his back and right leg down to the ankle. At times there was constant definite numbness in parts of his leg. He wore a steel brace commencing at the lower abdomen and running up to the shoulder blades. He could not straighten up. He bent over at an angle of approximately forty-five degrees. It was difficult for him to raise and lower himself which was principally done with his arms. It was difficult for him to walk, and he was able to walk only short distances. He was unable to sleep without severe pain; and as a means of reducing the pain, he slept in a doubled-up position, which frequently required the tying of a cord to his knees and up over his neck. He took substantial sedatives, sometimes eight or ten aspirins a day; and he received heat treatments daily for approximately two or three hours. Beginning in October, 1954, plaintiff was confined at the honor camp of the federal penal institution at McNeil Island, Washington. While the record is silent in respect to the offense for which he was sentenced, it is stated in the brief of defendant that it was income tax evasion. Immediately after arriving at the penal institution, plaintiff was given a "No

Duty" classification, and he was not assigned to any duties. Sometime in December, he requested that he be allowed to do some typing in the office. The request was granted, but he found that he was unable to do the work because he could not sit at a typewriter for longer than a few minutes at a time. After a few minutes, the pain would become so intense that he would have to get up and walk around. After a few days, he gave up the effort to do typing and was not assigned to any duties thereafter. He spent most of his time in his dormitory, in the library, on the lawn, and in the garden.

Three doctors who had examined plaintiff testified either in person or by deposition. Referring to plaintiff's physical condition during the time here in question, the doctor who had performed the operation testified that in his opinion plaintiff could not engage in any substantial amount of work of the kind in which he had engaged prior to the accident. He expressed the view that plaintiff could not do any lifting or any of the traveling required by such occupation. At one juncture, he expressed the view that plaintiff could do executive or managerial office work in a very limited way for short periods of time. But when asked for what periods of time plaintiff could do work of that kind— during a day or during so many days a week—he said that he did not have an opinion that sharp. And at another juncture, he expressed the view that with a back condition of plaintiff's type, sitting for periods of more than thirty minutes was not good; that pains occurred; and that troubles were increased. A doctor who examined plaintiff at the penal institution on January 17, 1955, testified that in his opinion continued use of the brace was indicated. He expressed the view that plaintiff was not able to travel by automobile or truck four or five thousand miles a month. He expressed the further view that plaintiff was totally and permanently disabled from doing any heavy type of work. He expressed the further view that plaintiff

was capable of carrying on an office executive type of work not requiring physical exertion. And he expressed the further view that plaintiff's ability to meet people at a desk, show them rooms, and things of that nature, probably would be limited. On February 25, 1955, another doctor examined plaintiff at the penal institution. That doctor was also confined there for income tax evasion and had occasion to observe plaintiff daily. Based upon his observation of plaintiff and his examination of plaintiff, he expressed the view that plaintiff was totally disabled from pursuing his normal occupation of property owner and operator. He expressed the further view that plaintiff was not able to travel. He expressed the further view that plaintiff could sit in a chair, answer the telephone, and make decisions, for short periods of time; but that he could not sit in a chair for several hours a day. And he expressed the further view that if plaintiff tried to sit in a chair, answer the telephone, and make decisions, he would have to get up every twenty or twenty-five minutes, walk around, stretch, and then sit down again. And a fourth doctor testified that he had never examined plaintiff but had examined the written report made by one of the doctors who examined plaintiff at the penal institution. Based upon such report, he expressed the view that plaintiff was capable of doing executive and office work not requiring much physical exertion. He expressed the further view that any work that plaintiff might be able to perform would be strictly desk work where no physical exertion was necessary. And he expressed the further view that plaintiff was unable to spend his time in an office for a normal routine of his business operations.

■ Accepting as true the evidence establishing in their totality the facts outlined, and viewing the inferences fairly to be drawn therefrom in the light most favorable to plaintiff, we think that plaintiff met and discharged the burden of proof and made a case for the jury upon the issue of total disabil--

ity. Compare, Colovos v. Home Life Insurance Company of New York, supra; Gibson v. Equitable Life Assurance Society of United States, supra; Ralston v. Metropolitan Life Insurance Co., supra.

The judgment entered for defendant is vacated and the cause is remanded with directions to reinstate and reenter the original judgment entered for plaintiff upon the verdict of the jury.